UNITED STATES of America,
Plaintiff–Appellee,

v.

Kenneth J. BALDWIN, Defendant–
Appellant.

No. 92–2344.

United States Court of Appeals,
Seventh Circuit.

Argued May 4, 1993.

Decided Sept. 15, 1993.

R. Jeffrey Wagner, Asst. U.S. Atty., Office of the U.S. Atty., Milwaukee, WI, for plaintiff-appellee.

Richard L. Zaffiro, West Allis, WI, for defendant-appellant.

Before CUDAHY, FLAUM, and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

This case comes before the court for the second time on appeal from Kenneth J. Baldwin's sentence. We detailed the factual background of the case in our first decision, *see United States v. Baldwin*, 956 F.2d 643 (7th Cir.1992) (*Baldwin I*), and only a brief overview is necessary for our purposes here. A federal grand jury indicted Baldwin on charges of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and assault of a federal officer with a deadly weapon in violation of 18 U.S.C. § 111. The underlying conduct took place on two separate occasions. Baldwin sold four ounces of cocaine to a confidential informant in the presence of an undercover Drug Enforcement Agent on November 29, 1988. Over the next month, Baldwin and the agent negotiated the sale of a kilogram of cocaine. On January 5, 1989, the two met for the ostensible purpose of transacting the deal; instead, Baldwin attacked the agent with a meat cleaver in an attempt to steal his money. Baldwin pled guilty to the distribution count in return for a dismissal of the assault count.

In calculating Baldwin's offense level at 26, the district court applied a two-level enhancement pursuant to Sentencing Guideline 2D1.1(b)(1) based on Baldwin's use of a dangerous weapon. At the time, that provision read: "If a firearm or other dangerous weapon was possessed during commission of the offense, increase by 2 levels." U.S.S.G. § 2D1.1(b)(1) (Oct. 1988).[1] In *United States v. Rodriguez–Nuez*, 919 F.2d 461 (7th Cir. 1990), we held that the "during commission of the offense" language in that guideline "must mean the offense *of conviction*." *Id.* at 467 (emphasis in original). Accordingly, on Baldwin's first appeal, we vacated his sentence because Baldwin did not possess the meat cleaver during the offense for which he was convicted, the drug distribution. *See Baldwin I,* 956 F.2d at 647.

■ On remand, the district court arrived at the same sentence by means of a two-level upward departure pursuant to a different section, § 5K2.6. That guideline states in pertinent part: "If a weapon or dangerous instrumentality was used or possessed in the commission of the offense the court may increase the sentence above the authorized guideline range." U.S.S.G. § 5K2.6. We conclude that this provision also does not properly apply to Baldwin's conduct, and we therefore again vacate the sentence.

A central feature of the federal sentencing system is the concept of relevant conduct. Under the principles set out in § 1B1.3, base offense levels and adjustments must be determined not only on the basis of the conduct. for which the defendant was convicted, but also on the basis of certain other acts and omissions which are related to that conduct. For example, in addition to any quantities of drugs for which the defendant was convicted of distribution, the sentencing court must aggregate quantities that were purchased or sold as "part of the same course of conduct or common scheme or plan as the offense of conviction." *Rodriguez–Nuez* implicitly held that the rules of relevant conduct do not apply to the dangerous weapon enhancement

found in § 2D1.1, because that guideline specifically contemplated that the dangerous weapon must have been possessed during commission of the offense of conviction. *See also United States v. Edwards,* 940 F.2d 1061, 1064 (7th Cir.1991) (following *Rodriguez–Nuez* ).[2]

As a purely textual matter, the relevant conduct provision ought not apply to departures because § 1B1.3 specifies "factors that determine the guideline range," whereas departures, by definition, go outside the range itself. The courts of appeals, however, have not interpreted that provision so narrowly. *See, e.g., United States v. Sanders,* 982 F.2d 4, 10 (1st Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993); *United States v. Kim,* 896 F.2d 678, 684 (2d Cir.1990). In any case, § 5K2.6 contains language—"... used or possessed in the commission of the offense ..."—which is nearly identical to that found in § 2D1.1(b)(1). *See United States v. Connor,* 950 F.2d 1267, 1277 & n. 6 (7th Cir.1991) (noting the close similarity). We conclude that § 5K2.6 likewise contemplates departures only when the dangerous weapon was possessed during the commission of the offense. If the Sentencing Commission intended to authorize departures when a dangerous weapon was possessed during other conduct, it would have chosen different language to effectuate that purpose.

Perhaps realizing the difficulties for their argument posed by the language of § 5K2.6, the government looks to another section to justify the district court's departure here. The fourth paragraph of § 5K2.0 (which it- self is entitled "Grounds for Departure") previously stated: "Harms identified as a possible basis for departure from the guidelines should be taken into account only when they are relevant to the offense of conviction, within the limitations set forth in § 1B1.3." U.S.S.G. § 5K2.0. The government claims that Baldwin's possession of the meat cleaver was relevant to the distribution count within the strictures of § 1B1.3. It argues, in a

---

1. Unless otherwise indicated, all references are to the October, 1988 edition of the Guidelines Manual.

2. The relevant conduct guideline allows for this result. *"Unless otherwise specified,* [the base offense level and other calculations] shall be determined on the basis of the following...." § 1B1.3(a) (emphasis added).

somewhat conclusory fashion, that assaulting the federal agent was "part and parcel of [Baldwin's] ongoing criminal activity" involving drug distribution "and therefore 'relevant' to the offense of conviction." Section 1B1.3(a)(2) defined relevant conduct as "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction" with respect to offenses of a character for which grouping is required under § 3D1.2(d). *Id.* § 1B1.3(a)(2). Presumably, the government believes that the abortive drug sale belongs to the same "course of conduct or common scheme or plan" as the earlier transaction, and since the possession of the meat cleaver would be a specific 'offense characteristic of the later (uncharged) offense, it could also be grouped with the earlier one. *See id.* Ch. 3, Pt. D ("Multiple Counts"), intro. comment. ("[I]nclud[e] any specific offense characteristics for the conduct taken as a whole.").

This theory suffers from several problems. First, § 5K2.0 is a general statement about grounds for departure that does not necessarily override provisions that pertain to more specific grounds, such as those found in § 5K2.6. Second, as the drafters of § 5K2.0 themselves acknowledged, the meaning of the fourth paragraph is cloudy at best. Indeed, the Sentencing Commission eliminated it in 1990 after concluding that it was "unclear and overly restrictive." *Id.* App. C, amend. 358. Third, the paragraph by its own terms looks to relevant conduct only when "harms [are] identified as a possible basis for departure." Section 5K2.6, on the other hand, discusses the *means* by which a crime is committed—weapons and dangerous instrumentalities—not the *results.* Finally, to accept the government's argument would be to undermine completely the rule the Commission established, as interpreted by *Rodriguez–Nuez,* with regard to § 2D1.1. To restrict the adjustment in § 2D1.1(b)(1) only to situations in which the gun was possessed during the offense of conviction, but then allow the district court to circumvent

this rule by way of a departure, seems a perverse interpretation.[3]

■ These reasons convince us that it was improper to depart upward because Baldwin possessed a meat cleaver during his encounter with the DEA agent on January 9, 1989. Nevertheless, we believe that an upward departure would have been justified on the ground that an *assault* took place. Presumably, it was the actual assault, rather than the mere possession of the meat cleaver, that left the district court unsatisfied with a sentence based solely on drug quantities. Not every action that is tenuously connected to the offense of conviction may become the subject of a departure. "[T]he Commission's carefully explained compromise between 'charge offense' and 'real offense' sentencing would be undermined if a sentencing judge could make an upward departure for any act of misconduct, regardless of relationship to the offense of conviction." · *Kim,* 896 F.2d at 683. In this case, we believe that there is a sufficiently close connection between these two events. The assault and attempted robbery could not have occurred had Baldwin not been negotiating a drug deal with the agent. These were not random events that bore only an incidental relationship with each other. *Cf. id.* ("For example, a physical injury inflicted in the course of committing a fraud, though not sufficiently typical to warrant identification as a specific offense characteristic with a specified base level adjustment, would justify a departure above the offense level for fraud. But that rationale would not justify a departure simply because the defendant, at some point during the time when the fraud was being committed, engaged in a barroom brawl with someone having no connection with the fraud."). Departures are appropriate when the court finds "an aggravating or mitigating circumstance ... that was not adequately taken into consideration by the Sentencing Commission...." 18 U.S.C. § 3553(b). In this case, surely the assault was an aggravating circumstance that placed Baldwin's conduct out-

---

3. In *Baldwin I,* we indicated that since § 2D1.1 has now been amended to read "[i]f a dangerous weapon (including a firearm) was possessed, increase by 2 levels," U.S.S.G. § 2D1.1(b)(1) (Nov.

1992), the government need no longer prove that the defendant possessed it during the offense of conviction.

side the "heartland" of typical drug distribution cases. *See* U.S.S.G. Ch. 1, Pt. A(4)(b).

We therefore vacate Baldwin's sentence because § 5K2.6 does not authorize a departure on these facts, but we leave open the possibility on remand of a departure based on Baldwin's actions involving the agent.

VACATED AND REMANDED.