*-321
 
 ILANA DIAMOND ROVNER, Circuit Judge.
 

 Ashavan Purchess pleaded guilty to a charge of conspiracy to import cocaine and marijuana. He appeals from the sentence imposed under the Sentencing Guidelines because the district court declined to award him a reduction for acceptance of responsibility and departed upward to account for conduct which resulted in death.
 

 BACKGROUND
 

 Purchess was charged with a conspiracy to import cocaine and marijuana in violation of 21 U.S.C. §§ 952(a)(1) and 846. Purchess and several associates arranged a series of trips to Jamaica, where Purchess owned a home. The participants in the conspiracy stayed at Purchess’ home while in Jamaica, purchased cocaine and sometimes hashish and marijuana, and then transported the drugs back to the United States, usually by swallowing plastic pellets filled with the drugs. At times, Purchess went to Jamaica with his cohorts, and other times he monitored events from the United States. For most of the trips, Purchess arranged for his brothers in Jamaica to supply the drugs and pack them into pellet form. When events went as planned, the conspirators would discharge the pellets upon arrival in the United States and then either sell the drugs themselves or turn them over to Purchess. Pur-chess was charged with making or arranging four such trips over a period of approximately, one year.
 

 On the first trip, Purchess traveled to Jamaica and arranged with a drug supplier identified only as “Ray” to smuggle hashish and marijuana into the United States. Several participants in the scheme attempted to bring more than a hundred pounds of marijuana and about two pounds of hashish into Miami in duffel bags. All were arrested at the airport. Another courier, who had swallowed about three quarters of a pound of hashish in pellet form, returned separately and gave two ounces of the hashish to Pur-chess.
 

 On the second trip, two couriers ingested about four ounces of hashish and an equal amount of cocaine in pellet form. The couriers were arrested shortly after their arrival at O’Hare Airport in Chicago for disorderly conduct. They spent the night in jail, where they passed most of the cocaine and hashish, flushing it down the toilet. What remained after they were released was given to Pur-chess.
 

 On the third trip, three couriers ingested a few ounces of cocaine and about 400 grams of hashish, again in pellet form. They carried the drugs back to Madison, Wisconsin, Pur-chess’ home base in the United States, and gave Purchess about half the haul. On the fourth trip, four couriers swallowed more than 400 grams of cocaine and more than 200 grams of hashish, again in pellet form. This time, two of the couriers were detained at the airport and the drugs they ingested were seized. The other two couriers were questioned and released, and again, Purchess received a portion of the drugs they were carrying.
 

 During a fifth trip (hereafter “Trip Five”), which the government agreed was not part of the conspiracy with which Purchess was charged, Purchess participated in a drug buying trip to Jamaica with Kristopher Zu-rheide, Phillip Roh and others. Roh had participated in the third trip, but Zurheide had not previously been part of the drug import group. As with prior trips, the participants stayed at Purchess’ home in Jamaica. Once in Jamaica, Zurheide gave Pur-chess approximately $3000. Although there is some dispute over why Zurheide gave this money to Purchess, everyone agrees that the money was used to buy cocaine for Zurheide from Purchess’ brothers. Zurheide swallowed seventy-seven pellets of cocaine and two of marijuana for transport back to the United States, intending to sell the drugs for his own profit on arrival. But events did not go as planned. During the flight back to the United States, Zurheide became ill, and the plane was rerouted from Tampa to Miami so that Zurheide could receive emergency medical attention. Apparently, one or more of the pellets had opened in Zurheide’s body, causing symptoms of a drug overdose. Zu-rheide denied to paramedics that he had ingested drugs and refused to allow himself
 
 *-320
 
 to be x-rayed. He was taken to a hospital where he eventually admitted swallowing seventy-seven pellets of cocaine, but continued to refuse medical treatment. Less than two hours after Zurheide arrived at the hospital, he died. An autopsy confirmed that the cause of Zurheide’s death was “body packer syndrome.” A deadly amount of cocaine had leaked from the pellets.
 

 Purchess pleaded guilty without a plea agreement. At his plea hearing, he admitted all of the conduct charged in the indictment for the offense of conviction, including each of the government’s allegations (with one minor exception) relating to the first four trips described above. As for the minor exception, he denied through his attorney, in response to a question from the court, that he sent a $197 money order to Jamaica as part of the conspiracy, instead attributing this action to a co-conspirator. The court then raised the issue of Trip Five on the record at the plea hearing, noting that the parties agreed to defer until sentencing the determination of Purchess’ role in Trip Five. Under the advice of his attorney, Purchess remained silent at both the plea hearing and the sentencing hearing as to the conduct involved in Trip Five, which resulted in the death of Zurheide.
 
 [1]
 

 A probation officer prepared a Presen-tence Investigation Report (the “PSR”) which deemed as relevant conduct not only the first four trips, but Trip Five as well. In his objections to the PSR, Purchess’ attorney disputed some facts relating to Trip Five. He also objected to treating Trip Five as “relevant” conduct. He argued that Zurheide was the leader of a separate conspiracy, which involved Zurheide purchasing drugs for himself to resell in the United States. In conjunction with this spin on events, he stated that Purchess denied that he was paid for drugs obtained by Zurheide in Jamaica. Instead, he claimed Purchess merely held the $3000 for Zurheide because Zurheide feared being robbed of the large amounts of cash he was carrying. Purchess admitted that this money ultimately went to his brother to pay for drugs obtained by Zurheide but denied that he personally profited in any way from this transaction. The attorney also conveyed that Purchess denied any involvement with Roh during Trip Five. He argued that, unlike the first four trips where Roh and other couriers transported drugs to the United States for Purchess, Roh was not transporting drugs for Purchess during Trip Five. Rather, he was buying and transporting them for himself. Thus, he argued, Trip Five was not relevant conduct because it did not bear the necessary relation to the offense of conviction to allow it to be treated as the same course of conduct. No affidavit or evidence of any kind was tendered in support of this objection.
 

 At the sentencing hearing, Purchess’ attorney continued his theme that Trip Five was not relevant conduct. The government agreed that Purchess was entitled to a reduction for acceptance of responsibility because he timely admitted all the conduct charged and “consistently refused or declined to comment” on the relevant conduct. The Assistant United States Attorney stated to the court, “I believe that any challenges that he may have raised aren’t factual in nature but simply challenge the legal conclusions based on the facts but pretty much agreed upon facts in this case.” Transcript of Sentencing before the Honorable John C. Shabaz, April 12, 1996 (hereafter “Transcript of Sentencing”), at 15-16. The district court disagreed, finding instead that Trip Five constituted relevant conduct and that Purchess had falsely denied or frivolously contested that conduct through his attorney’s challenges to the PSR. In particular, the court found the claim that Purchess was not paid for the drugs bought by Zurheide to be “frivolity at best.”
 
 Id.
 
 at 31. The court found that, “The fact is that they all knew what the money was for. The money was for the purchase of drugs.”
 
 Id.
 
 The court also noted that al
 
 *-319
 
 though Purehess denied any involvement with Roh on Trip Five, “[h]is fingerprints are all over the place. He arranged this trip just as he arranged the other four knowing full well of Roh’s ability to import drugs back to the United States for the purposes of sale.”
 
 Id.
 
 at 31-32. Because Trip Five was part of the same course of conduct, the court concluded it was relevant conduct, meaning that Purehess would be held responsible both for the drugs that Zurheide brought into the United States and for Zurheide’s death on his final fatal trip.
 

 In assessing whether to grant a reduction for acceptance of responsibility, the court noted that although Purehess himself had remained silent on relevant conduct, his attorney’s challenges on his behalf were factual challenges rather than strictly legal argument, and these challenges were frivolous contests to relevant conduct. The court expressed frustration over cases like the instant one, where the defendant remained silent and the lawyer made frivolous arguments. The court refused to characterize these challenges as “lawyer talk,” stating that the time had come for this Court to decide whether the attorney’s challenges can be attributed to the defendant for the purposes of assessing acceptance of responsibility. The court also considered that when given the opportunity to speak on his own behalf, Purehess mumbled the two word apology, “I’m sorry.” The court denied the reduction for acceptance of responsibility, finding that Pur-chess had denied relevant conduct, showed no remorse and was simply trying to get a lower sentence without actually accepting responsibility for his actions.
 

 The court then granted the government’s request for an upward departure under Sentencing Guideline § 5K2.1 because of the death of Zurheide. Noting that Purehess had laughed at a courier who reported feeling sick after swallowing cocaine pellets, the court found that Purehess was on notice that persons transporting drugs in this way were subject to risk of great bodily harm. Furthermore, the court noted that upon learning of Zurheide’s death, Purehess tried to determine who had wrapped Zurheide’s cocaine, showing an awareness of the danger of leakage. Because of the amount of money Zu-rheide gave to Purehess, roughly $3000, Pur-chess was on notice of the large quantity of drugs Zurheide was smuggling, and was thus aware of the increased risk that something could go wrong with the pellets. Thus, the court determined that Purehess knowingly or intentionally risked Zurheide’s death, and on that basis, the court departed upward three levels. In doing so, the court rejected Pur-chess’ argument that Zurheide caused his own death by initially lying about ingesting the drugs and then refusing medical treatment. On the contrary, the court found that Purehess put into motion a series of events leading to Zurheide’s death, and that once Zurheide became ill, Zurheide was essentially powerless to take care of himself and prevent his own death.
 

 Purehess appeals from the court’s refusal to grant him a reduction for acceptance of responsibility and also from the upward departure for Zurheide’s death. He argues that his challenges to relevant conduct were not factual contests but challenges to the legal conclusions drawn from the facts he fully admitted. The government agreed with Purehess below, recommending to the court that it grant the acceptance of responsibility reduction because the defendant’s challenges to the PSR were not factual in nature, but “simply challenge the legal conclusions based on the facts.” On appeal, the government reverses its position and states that Purehess contested facts associated with relevant conduct. As for the upward departure, Purehess argues that Zurheide’s death cannot be used as the basis for that departure because death resulted not from the offense of conviction but from relevant conduct. Furthermore, he argues that he did not cause Zurheide’s death, but that Zu-rheide’s own voluntary actions were the cause of his death.
 

 DISCUSSION
 

 We review a district court’s findings of fact in the sentencing context for clear error.
 
 United States v. Hammick,
 
 36 F.3d 594, 597 (7th Cir.1994). The district court’s application of the Sentencing Guide
 
 *-318
 
 lines to the facts is also given due deference, but we review
 
 de novo
 
 questions of law involving the interpretation of a Guideline provision.
 
 Id.
 
 Section 3El.l(a) of- the Sentencing Guidelines provides for a two level reduction in a defendant’s base offense level if “the defendant clearly demonstrates acceptance of responsibility for his offense.” Part (b) of that same section allows for an additional one level reduction if (1) the defendant qualifies under part (a); (2) has a base offense level of 16 before applying part (a); and (3) either timely provides the government complete information concerning his own involvement in the offense or timely notifies the government of his intention to enter a guilty plea, permitting the government to avoid the expense of preparing for trial. “The defendant bears the burden of proving that he is entitled to a reduction in base offense level for acceptance of responsibility.”
 
 Hammick,
 
 36 F.3d at 597.
 

 In denying the reduction here, the district court stated:
 

 I don’t believe there has been that clear demonstration of acceptance of responsibility. I believe that the denials are denials of fact which are relevant conduct. I believe that there is a less than substantial argument made on these issues which have been soundly argued by the government. The similarity, the regularity, the tempo-ralness of this, the identification of the same roles, the continuing conduct that existed, I think it’s apparent on its face from these facts, facts which are contested and certain portions thereof as they relate to the Zurheide and the Roh importation, and I believe it’s readily apparent that there was importation, that this was a part of the conspiracy and at this point I find that it could only be a factual dispute rather than a creative conclusion of law and I reject the suggestion that there be any acceptance of responsibility here. I believe that the defendant has frivolously contested that which is relevant conduct in this matter through those arguments relating thereto.
 

 Transcript of Sentencing at 35-36. The court further stated that “the denial of acceptance of responsibility is indeed one which has been bothering this Court for some time where a defendant remains silent, frivolous and/or less than substantial arguments are made on the client’s behalf and then we address it only as lawyer talk and say, Well, that really isn’t the denial of relevant conduct.”
 
 Id.
 
 at 37. The court thus appears to have inextricably intertwined in its analysis a number of justifications for its decision, all relating to allegedly frivolous contests to relevant conduct. We will parse out these justifications and discuss the appropriateness of each one.
 

 First, the court appears to have based its decision in part on Purchess’ challenges to whether Trip Five was “relevant conduct.” Second, the court attributed to Purchess his attorney’s challenges to certain facts alleged in the PSR relating to Trip Five, facts the court ultimately found to be true. Finally, the court found that Purchess was simply trying to get a lower sentence and was not actually remorseful concerning his conduct.
 

 The parties have cited no cases directly addressing the issue of whether the reduction for acceptance of responsibility can be denied because the defendant contested whether his conduct could be characterized as “relevant.” The analysis of whether conduct is “relevant” is a mixed question of law and fact. We think this situation is closely analogous to challenging the constitutionality of a statute while admitting the conduct which would violate the statute, or challenging the applicability of a statute to the facts. In both cases, the application notes to the Guidelines suggest that such challenges do not deprive an otherwise eligible defendant of the reduction for acceptance of responsibility, even if the defendant has put the government to the expense of trial.
 
 See
 
 U.S.S.G. § 3E1.1, comment, (n.2) (a defendant may still be eligible for an acceptance of responsibility reduction even though the defendant exercises the constitutional right to a trial “where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt
 
 (e.g.,
 
 to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct).”).
 
 See also United States v. Cedano-Rojas,
 
 999 F.2d 1175, 1182 n. 7 (7th Cir.1993) (same).
 
 *-317
 
 Furthermore, the Eleventh Circuit recently ruled that where a defendant admits all the necessary facts of his scheme to the government, “he should not be precluded from having counsel argue the
 
 legal
 
 effect of those facts to the sentencing court by risking the benefits derived by his candid admissions.”
 
 United States v. Smith,
 
 101 F.3d 98, 100 (11th Cir.1996) (emphasis in original). “Otherwise, the constitutional rights to effective assistance of counsel and due process are illusory.”
 
 Id.
 
 We agree that the district court should not deny the reduction for acceptance of responsibility simply because the defendant challenges a legal conclusion drawn from facts the defendant admits.
 

 But this ease is complicated by the fact that, in order to make his “legal” argument, Purehess’ attorney contested two facts concerning conduct the court eventually ruled was “relevant.” Specifically, in order to argue that Trip Five was not relevant conduct, Purehess’ attorney contested whether Pur-chess profited from the Zurheide transaction and also contested whether Purehess had any involvement with Roh on Trip Five. Purehess did not profit from the Zurheide transaction, he argued, because although he received money from Zurheide on Zurheide’s arrival in Jamaica, he was simply holding the money for Zurheide, who feared being robbed. Pur-chess admitted that he eventually passed the money on to his brother, from whom Zu-rheide had purchased drugs, but denied that he profited from this transaction. As to Roh, Purehess admitted that he had contact with Roh in Jamaica but denied that he had had prior contact with Roh about importing drugs into the United States. The court found that these were factual challenges and not legal argument, and found that the challenges were “frivolity,” thus depriving Pur-ehess of the acceptance of responsibility reduction.
 

 The reasons for the district court’s frustration become evident at this point. The defendant and his attorney appear to have been attempting to manipulate the Guidelines. The attorney directed his client to remain silent about relevant conduct, apparently in order to keep his client within Application Note 1(a) to § 3E1.1, which permits a defendant to remain silent with respect to his relevant conduct without affecting his ability to obtain an acceptance of responsibility reduction. The attorney then challenged facts comprising relevant conduct in the course of argument and in the written objections to the PSR. Yet because his client was remaining silent, the attorney proffered no evidence in support of these challenged facts, hoping perhaps that the court would side with him without ever having to risk his client’s acceptance of responsibility reduction. After all, if his client offered no affidavit or testimony disputing the PSR, the client had technically remained silent. Because the Guidelines provide that an otherwise eligible defendant may remain silent as to relevant conduct without losing the acceptance of responsibility reduction, the attorney presumably believed his client had everything to gain and nothing to lose from this strategy. But in this case, the district court called the attorney’s bluff, and attributed the attorney’s factual challenges to Purehess. We find this troubling for a number of reasons.
 

 First, the assessment of acceptance of responsibility is typically an assessment personal to the defendant. Yet, in the instant case, there is nothing other than the attorney-client relationship linking the attorney’s argument to the defendant himself. We look for this link (without labeling it so), for example, when we are reluctant to credit defendants with statements of contrition made through their attorneys. Although we have riot held that a district court may give no weight to an attorney’s statement on the defendant’s behalf in assessing acceptance of responsibility, our colleagues in the Fifth Circuit have declined to credit an attorney’s statement where the defendant himself makes no statement of remorse or contrition.
 
 United States v. Helmstetter,
 
 56 F.3d 21, 23 (5th Cir.1995).
 
 See also United States v. Corral-Ibarra,
 
 25 F.3d 430, 442 (7th Cir. 1994) (although “in no way disparaging his decision to speak through counsel, ... we nevertheless think he may have presented a stronger argument for the reduction if he had exercised his right to allocution and stated, through an interpreter if necessary, a
 
 clear and unequivocal
 
 acceptance of responsibility.”) (emphasis in original);
 
 United
 
 
 *-316
 

 States v. Williams,
 
 989 F.2d 1061, 1074 (9th Cir.1993) (finding no error in holding that an “equivocal” letter of contrition from defendant’s attorney was insufficient to merit the reduction for acceptance of responsibility).
 
 [2]
 
 What these courts are looking for is an indication of acceptance of responsibility by the defendant himself, and' not just by his lawyer. In a case such as this one, where the defendant remains otherwise silent as to relevant conduct but his lawyer challenges certain facts alleged in the PSR, we think the court should attempt to ensure that the defendant understands and approves the argument before attributing the factual challenges' in the argument to the defendant for purposes of assessing acceptance of responsibility.
 

 Moreover, it is unclear from the record whether the defendant here understood the challenges his attorney was making in the course of legal argument. Again, because the acceptance of responsibility assessment is a finding relating to the moral acceptance of responsibility by the’ defendant, the district court should have some reason to attribute the attorney’s statements to the otherwise silent defendant. Here, where the defendant had a fifth grade education and a limited command of the English language, and where the record contains no link between the attorney’s statements and the defendant, we are reluctant to attribute the attorney’s statements to the defendant.
 

 So what is the district court to do when faced with an attorney who appears to be manipulating the Guidelines to the Ghent’s advantage in this way? When an attorney challenges the facts set out in the PSR during argument, we think the court should put counsel to his or her proof. The court should ask whether the attorney intends to present evidence in support of these fact challenges. If so, the argument can go forward. If not, the argument is really baseless, and the court need not allow an attorney to waste the court’s time with a baseless argument when there is no evidence supporting the factual challenges. After all, an attorney’s statements denying particular facts in the PSR are not evidence. And a defendant who wishes to challenge a factual finding in the PSR must do so with
 
 evidence
 
 and not with simple denials of the PSR.
 
 See United States v. Taylor,
 
 72 F.3d 533, 547 (7th Cir.1995) (where “a defendant has failed to produce any evidence calling the report’s accuracy into question, a district court may rely entirely on the PSR;” “A defendant cannot show that a PSR is inaccurate by simply denying the PSR’s truth ... [but instead] must produce some evidence that ‘calls the reliability or correctness of the alleged facts into question’ ”) (citing
 
 United States v. Mustread,
 
 42 F.3d 1097, 1101 (7th Cir.1994));
 
 United States v. Coonce,
 
 961 F.2d 1268, 1279 (7th Cir.1992) (the court may aecept the prosecutor’s version of the PSR as true unless the defendant produces evidence to demonstrate that controverted statements are inaccurate or incredible). If the attorney proffers evidence, we can safely assume the defendant himself is challenging the facts, and the court can then decide whether the challenge is frivolous.
 

 But whether or not the attorney accepts the court’s invitation to put on evidence, the court can alternatively question the otherwise silent defendant to determine if the defendant understands and adopts the attorney’s statements challenging facts underlying possibly relevant conduct. In the instant case, the court asked the defendant generally at the beginning of the sentencing hearing whether he had read and understood his attorney’s objections to the PSR. Pur-
 
 *-315
 
 chess indicated that the document had been read to him, but when the court asked Pur-chess if he had any further challenges to the PSR, he became confused, gave a contradictory answer and then told the court, “My English is not so good.” Transcript of Sentencing at 3-4. After a recess lasting a few hours, which the court called to allow the defendant’s attorney more time to explain the relevant documents to his client, the court again asked Purchess whether the documents had been read to him and whether he had further challenges. Purchess indicated that the documents had been read to him and that he had no further challenges. The court never ascertained whether Purchess agreed with or even understood his attorney’s statements challenging the facts in the PSR. Although we are reluctant to add to the district court’s already onerous burdens in sentencing under the Guidelines, we believe that in these limited circumstances, where the defendant remains silent as to relevant conduct, and the defendant’s attorney challenges the facts set out in the PSR, the best course is for the court to determine if the defendant understands and agrees with his attorney’s argument before using counsel’s challenge as a basis for denying the defendant a reduction for acceptance of responsibility. If the defendant does understand and agree with the argument, then the factual challenges can be and should be attributed to him. If the defendant rejects the attorney’s argument, the court can simply disregard it. Such a procedure would insure that a defendant would be unable to reap the benefit of his attorney’s factual challenges without risking the acceptance of responsibility reduction.
 

 Finally, the court offered a third reason for denying the acceptance of responsibility reduction here. The court found that Purchess was motivated by a desire to “receive a lower level of sentencing without actually accepting responsibility for his actions.” Transcript of Sentencing at 49-50. The court was not persuaded by Purchess’ one sentence apology, nor by his timely admissions of all the conduct involved in the offense of conviction. A fundamental principle underlying the acceptance of responsibility reduction is “that in the absence of evidence of sincere remorse or contrition for one’s crimes, a guilty plea entered for the apparent purpose of obtaining a lighter sentence does not entitle a defendant to a reduction for acceptance of responsibility.”
 
 Hammick,
 
 36 F.3d at 600. Indeed, the application notes to section 3E1.1 state that a defendant who enters a guilty plea is not entitled to this reduction as a matter of right. U.S.S.G. § 3E1.1, comment, (n.3). Rather, the court is “required to look beyond formalistic expressions of culpability and to determine whether the defendant has manifested an acceptance of responsibility for his offense in a moral sense.”
 
 Hammick,
 
 36 F.3d at 600. Thus, a determination of a failure to accept responsibility is one of those findings uniquely suited to the intuition and experience of the district judge, and that is why we reverse such a finding only for clear error. In addition to the other reasons it provided, the district court apparently believed that Pur-chess was insincere in his apology to the court, and that he did not actually accept responsibility for his offense. Purchess offers no reason for us to believe that such a finding was clearly erroneous.
 

 Normally, we would remand where it is unclear from the record to what extent the court relied on permissible factors such as Purchess’ demeanor, tone of voice or words to the court (or lack of words to the' court, as the case may be), and to what extent the court relied on impermissible factors such as Purchess’ challenge to the purely legal conclusion that his conduct surrounding Trip Five was relevant conduct, or his attorney’s argument about two facts found in the PSR. However, in this case, a careful review of the record reveals that the denial of the acceptance of responsibility reduction is well grounded in a permissible factor — the district court’s finding that Purchess was not remorseful but was simply trying to obtain a lower sentence. Therefore, remand would be futile, and we affirm the district court’s denial of the reduction.
 

 That ruling does not end our inquiry, however, because the court also departed upward three levels under Sentencing Guideline § 5K2.1. for the death of Zurheide, resulting from conduct the court found to be
 
 *-314
 
 relevant. Purehess argues that only conduct comprising the offense of conviction can be used in departing upward under section 5K2.1, that Zurheide was the cause of his own death, and that any of Purehess’ conduct concerning Trip Five was not relevant conduct. Under
 
 Koon v. United States,
 
 — U.S. —,—, 116 S.Ct. 2035, 2048, 135 L.Ed.2d 392 (1996), we review the district court’s decisions on departures from the Sentencing Guidelines for abuse of discretion. “The abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.”
 
 Id.,
 
 — U.S. at—, 116 S.Ct. at 2048.
 

 As a threshold matter, we must determine whether the district court abused its discretion in finding that Trip Five was relevant conduct. Purehess argues that Trip Five must either be part of the offense of conviction or nothing at all, and because the government agrees it is not part of the offense of conviction, it is nothing at all. Purchess is essentially arguing that there can never be relevant conduct in conjunction with a conspiracy charge because if the conduct is part of the same scheme, plan or course of conduct, then by definition it is part of the conspiracy. In other words, because relevant conduct is assessed in terms of relation to the offense of conviction, any conduct that is related enough to be relevant conduct must be subsumed by the conspiracy itself. But the plain language of the Guidelines contradicts this circular analysis. Section 1B1.3 defines relevant conduct broadly to include
 

 all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured or willfully caused by the defendant;
 
 and
 
 ... in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.
 

 U.S.S.G. § 1B1.3 (emphasis added). Thus, the Guidelines incorporate liability to a defendant for his own conduct that is relevant to a conspiracy, as well as liability for conduct of others that is relevant to the conspiracy, as long as those acts of others are reasonably foreseeable to the defendant.
 
 See also Taylor,
 
 72 F.3d at 548 (conduct may be relevant to a conspiracy when the offense of conviction and the conduct are substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar
 
 modus operandi;
 
 among the factors the court should consider are the similarity, regularity and temporal proximity of the incidents). Therefore, we reject Purehess’ argument that there can be no relevant conduct to a conspiracy charge as a matter of law. Once that legal hurdle is surmounted, Pur-chess offers no further challenge to the district court’s consideration of the similarity, regularity and temporal proximity of Trip Five to the offense of conviction. We see no error in the district court’s finding that Trip Five was relevant conduct.
 

 We similarly reject Purehess’ argument that he cannot be held accountable for Zurheide’s death because Zurheide caused his own death by first denying that he had swallowed' the drug-filled pellets, and then refusing medical treatment. The gravamen of Purehess’ claim is that Zurheide’s actions were a superseding, intervening cause of his death, and Purehess therefore cannot be held accountable for it. We disagree. In
 
 United States v. White,
 
 979 F.2d 539 (7th Cir.1992), we held that a defendant convicted of transporting a minor across state lines for the purposes of prostitution could be held accountable for her subsequent murder by a customer. We held there that when a defendant knowingly risks a victim’s death, or puts into motion a chain of events that foreseeably result in death, a court could depart upward for the ensuing death under Guideline section 5K2.1, the same section under which the court departed in the instant case. The court here found that the defendant put into motion a series of events that resulted in the taking of a human life by setting up a drug
 
 *-313
 
 importation business where the method of importation was swallowing drug-filled pellets. The court found that the defendant knew the risks of such activity because his own couriers had reported feeling ill after carrying drugs in this manner. The court also found that Purchess’ inquiry into who had packed Zurheide’s drugs into pellet form showed an awareness of the particular dangers of the drugs leaking from the pellets into the carrier’s body. Finally, the court found that Zurheide was powerless to control the situation once the drug leak began, and that Purchess should therefore be held accountable for Zurheide’s death. We find no error in that determination, and find
 
 White
 
 controlling on whether Zurheide’s independent actions should relieve Purchess of accountability for Zurheide’s death. In this ease as in
 
 White,
 
 the actions of the independent actor do not relieve the defendant of liability where the defendant has knowingly risked the victim’s death.
 

 We have not previously considered whether an upward departure under section 5K2.1 may be based on harm resulting from relevant conduct as opposed to conduct comprising the offense of conviction. Three other circuits have considered this issue, and all have ruled that a court may depart upward based on harm resulting from relevant conduct.
 
 See United States v. Sanders,
 
 982 F.2d 4 (1st Cir.1992);
 
 United States v. Figaro,
 
 935 F.2d 4 (1st Cir.1991);
 
 United States v. Kim,
 
 896 F.2d 678 (2d Cir.1990),
 
 holding limited by United States v. Contractor,
 
 926 F.2d 128 (2d Cir.1991);
 
 United States v. Shields,
 
 939 F.2d 780 (9th Cir.1991). Purchess argues that, in this circuit,
 
 United States v. Baldwin,
 
 5 F.3d 241 (7th Cir.1993), and
 
 United States v. Dawson,
 
 1 F.3d 457 (7th Cir.1993) require that departures be based only on the offense of conviction, and never on relevant conduct. We think both
 
 Baldwin
 
 and
 
 Dawson are
 
 distinguishable. In
 
 Baldwin,
 
 the departure was based on section 5K2.6, which allows a departure when a weapon is used “in the commission of the offense.” This Court has interpreted “offense” to mean offense of conviction.
 
 Baldwin,
 
 5 F.3d at 242. But section 5K2.1 contains no such limiting language, and instead allows a departure “if death resulted,” without any reference to whether the death resulted from the offense of conviction or from relevant conduct. Although we stated in
 
 Baldwin
 
 that “[a]s a purely textual matter, the relevant conduct provision ought not to apply to departures because § 1B1.3 specifies ‘factors that determine the guideline range,’ whereas departures, by definition, go outside the range itself,” 5 F.3d at 242, we noted that other courts of appeals have not interpreted that provision so narrowly.
 

 Nor are we persuaded that our decision in
 
 Dawson
 
 requires us to hold otherwise. In
 
 Dawson,
 
 we reversed an upward departure imposed under section 3D1.4, for uncharged bank robberies. We noted that the introductory commentary to section 3D states that “[tjhis Part provides rules for determining a single offense level that encompasses all the counts of which the defendant is convicted,” an express limitation of this section to the offense of conviction. As we have already stated, there is no such express limitation in section 5K2.1.
 
 Dawson
 
 also speaks in
 
 dicta
 
 of a requirement that a departure under section 5K2.0 be based only on the offense of conviction and not on relevant conduct. But again, the district court based its ruling on section 5K2.1, which is worded as broadly as possible. We cannot say that the district court abused its discretion in departing upward on the basis of a death resulting from relevant conduct.
 

 Since our decision in
 
 Baldwin,
 
 the Supreme Court has addressed the subject of departures in
 
 Koon v. United States,
 
 — U.S. —, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). Although
 
 Koon
 
 does not expressly address whether a court may depart based on relevant conduct,
 
 Koon
 
 generally informs us that the district courts enjoy broad discretion in deciding whether to depart when the particular facts of the ease are outside the “heartland” of Guidelines cases. The Court stated that the sentencing court’s decision to depart will in most cases be due substantial deference:
 

 Before a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline. To resolve this
 
 *-312
 
 question, the district court must make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing. Whether a given factor is present to a degree not adequately considered by the Commission, or whether a discouraged factor nonetheless justifies departure because it is present in some unusual or exceptional way, are matters determined in large part by comparison with the facts of other Guidelines cases.
 

 — U.S. at—, 116 S.Ct. at 2046-47. Thus, the Court adopted deferential review to afford the district court the “necessary flexibility to resolve questions involving ‘multifarious, fleeting, special, narrow facts that utterly resist generalization.’ ”
 
 Id.
 
 We think this is such a case.
 

 The Guidelines authorized the court to augment Purehess’ sentence for the
 
 amounts
 
 of cocaine transported by Zurheide once the court found that Trip Five was relevant conduct under section 1B1.3. But neither section 1B1.3 (governing relevant conduct) nor section 2D1.1 (governing the base offense level) takes into consideration the
 
 packaging
 
 of those drugs ■ into pellet form, intended to be swallowed by the buyer or the buyer’s courier, and transported in the body in this very dangerous manner. This packaging was used throughout the offense of conviction
 
 and
 
 during Trip Five. That the danger did not manifest itself until Trip Five does not relieve Purehess of liability for the packaging. The packaging takes the defendant’s conduct outside the heartland of Guidelines cases, where drugs are normally sold packaged in plastic bags or “bricks” and carried in cars or pockets or luggage. The Guidelines do not account for this extraordinarily dangerous packaging and transportation method but merely account for the amount of drugs involved. Zurheide did not just buy cocaine from Purehess’ organization; he bought cocaine packaged into pellets meant to be swallowed and transported in the body. We cannot say that the district court abused its discretion by departing from the Guidelines for death resulting from these unusually dangerous circumstances. Therefore, we affirm the upward departure under section 5K2.1.
 

 Affirmed.
 

 [1]
 

 . The application notes to Sentencing Guideline 3E1.1, the section pertaining to acceptance of responsibility, permit a defendant to "remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection.” U.S.S.G. § 3E1.1, comment, (n.l(a)). However, the note also provides that a defendant who "falsely denies, or frivolously contests, relevant conduct that the court determines to be trae has acted in a manner inconsistent with acceptance of responsibility.”
 

 [2]
 

 . Section 3E1.1 is geared towards assessing the sincerity of the defendant in accepting responsibility for his or her crimes. The application notes to that section reflect the judge's ability to assess the defendant’s demeanor, tone of voice and other factors to which the court of appeals is not privy in reaching it decision.
 
 See United States v. White,
 
 993 F.2d 147, 151 (7th Cir.1993) ("[t]he sentencing court views a defendant's acceptance of responsibility from a 'front row seat’ and its determination will be accorded great deference.”);
 
 United States v. Dvorak,
 
 41 F.3d 1215, 1217 (7th Cir.1994) (judges are to apply common sense to the defendants they observe, and “pat recitations of responsibility are not enough under § 3E1.1(a)”). A call for deference to the sentencing judge reflects the personal nature of the assessment, which suggests the court is to look to what the
 
 defendant
 
 says and how he says it, and not to the attorney's practiced and polished advocacy.