124 F.3d 205
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Gregory A. HORNBOSTEL, Defendant-Appellant.
 No. 96-4106.
 United States Court of Appeals, Seventh Circuit.
 Argued July 9, 1997.
Decided July 17, 1997.
 
 Appeal from the United States District Court for the Western District of Wisconsin, No. 96-CR-0042-S-02; John C. Shabaz, Judge.
 Before BAUER, FLAUM, and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Gregory Hornbostel pleaded guilty, without the benefit of a plea agreement, to conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) & 846. The district court sentenced him to 125 months' imprisonment after denying him a reduction under either U.S.S.G. § 3E1.1 for acceptance of responsibility or § 5C1.2, the safety valve provision. We affirm.
 
 HISTORY
 
 2
 Hornbostel and co-defendants Dennis Dombrock and Cole Brandt were charged with conspiring to possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Hornbostel pleaded guilty without a plea agreement, and the district court ordered the preparation of a presentence investigation report ("PSI"). The PSI reported that between October 1994 and June 1995 Hornbostel and Dombrock purchased a total of 44 ounces of methamphetamine from Hilarie Magnuson. It also stated that on six separate occasions Brandt obtained 2-3 ounces of methamphetamine on behalf of Hornbostel for a total of at least 12 ounces. Additionally, Hornbostel participated in the sale of 3 ounces of methamphetamine to Jody Berg on August 2, 1995, and on August 12th gave $4,800 to Brandt for the purpose of purchasing seven ounces of the drug. According to the PSI, Brandt and Hornbostel planned to add a cutting agent to this seven ounces, expanding the amount to 13 ounces, and then sell it.-The PSI, therefore, attributed a total of 72 ounces, or 2,041.2 grams, of methamphetamine to Hornbostel.
 
 
 3
 According to the sentencing guidelines, the base offense level for Hornbostel's crime is determined by the total quantity of drugs for which a defendant is responsible. U.S.S.G. § 2D1. 1(a)(3). The PSI used the figure of 72 ounces of methamphetamine to recommend that Hombostel's base offense level be set at 32. Further, the PSI recommended a three-level reduction for acceptance of responsibility, however, it declined to make a recommendation as to a safety valve reduction because it had not been determined whether Hornbostel satisfied the criteria noted in § 5C1.2(5); namely, providing truthful and complete information to the government concerning offense conduct.
 
 
 4
 Hornbostel's attorney, Peter J. Morin, submitted objections to the PSI. Hornbostel claimed that he did not meet Magnuson until January 1995 after his previous "source" was arrested. Further, he claimed that he purchased no more than three or four ounces of methamphetamine from her. He stated that Brandt obtained only six to eight ounces of the drug on his behalf, and that, although he was present at the August 2 sale to Jody Berg, he was not a participant in that sale. Additionally, he argued that he should not be charged with 13 ounces in regard to the August 12th plan, rather, he should only be credited with three ounces because he received neither the amount of money Brandt promised him or an equivalent, and because he only received three ounces of watered-down methamphetamine. He concluded that he should be held accountable for no more than 18 ounces, or 510.3 grams. Hornbostel personally made the same objections to the PSI's calculation of the drug amounts in his Statement of Offense. The government responded to these objections and withdrew its recommendation that Hornbostel receive a reduction for acceptance of responsibility.
 
 
 5
 After hearing testimony from, among others, Magnuson, Dombrock and Brandt, the district court found that the drug quantity attributions made in the PSI were predominantly correct and therefore decided Hornbostel's offense level was 32.[1] The court then denied him a reduction under either § 3E. 1 (acceptance of responsibility) or § 5C1.2 (safety valve). Judge John C. Shabaz, the sentencing judge, explained that a reduction under either provision was inappropriate because Hornbostel had falsely and frivolously denied relevant conduct.
 
 DISCUSSION
 
 6
 On appeal, Hornbostel challenges the district court's decision not to award him a three-level reduction for acceptance of responsibility. He also mentions that the district court should have granted him a two-level reduction under the safety-valve provision.
 
 
 7
 A district court's decision concerning a sentencing reduction under U.S.S.G. § 3E1.1 is a factual determination and, therefore, it is reviewed for clear error. United States v. Purchess, 107 F.3d 1261, 1265-66 (7th Cir.1997) ( § 3El.1); United States v. Akindele, 84 F.3d 948, 956 (7th Cir.1996). Under § 3El.1, a defendant is entitled to a reduction if he "clearly demonstrates acceptance of responsibility for his offense." The application notes to § 3E.1 instruct that a sentencing court should consider whether the defendant has "truthfully admitt[ed] the conduct comprising the offense(s) of conviction, and truthfully admitt[ed] or not falsely den[ied] any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct)." U.S.S.G. § 3E1.1, comment. (n.1(a)). This court has "previously observed that '[c]ontesting the veracity of the alleged relevant conduct is no doubt permissible and often perfectly appropriate. However, if a defendant denies the conduct and the court determines it to be true, the defendant cannot then claim he has accepted responsibility for his actions.' " Akindele, 84 F.3d at 957 (quoting United States v. Cedano-Rojas, 999 F.2d 1175, 1182 (7th Cir.1993)).
 
 
 8
 Here, as in Akindele, Hornbostel denied conduct that the district court found to have occurred. The record shows that Hornbostel "contested the veracity" of the PSI with regard to: 40 of the 44 ounces of methamphetamine that he and Dombrock obtained from Magnuson; four of the 12 ounces he purchased from Brandt; and four of the seven ounces he plotted with Brandt to buy for the purpose of cutting and reselling at a profit. Further, testimony in the record supports the district court's determination as to the drug amounts attributable to Hornbostel: Magnuson testified as to Hornbostel's involvement in the 44 ounces, as well as to the mechanics of the conspiracy between Hornbostel and Dombrock; and Brandt testified as to the plan to purchase seven ounces of methamphetamine and the purchases he made on behalf of Hombostel. In other words, the record supports the district court's conclusion that Hornbostel lied about the amount of methamphetamine involved in the conspiracy. Therefore, the district court did not clearly err in determining that Hornbostel falsely denied relevant conduct.
 
 
 9
 Hornbostel does not contest the district court's finding as to the drug amounts attributable to him. Rather, he argues that the district court in some way misled him by inviting him to make objections to the PSI, and that the testimony at the sentencing hearing was not so unequivocal that denying its substance was frivolous or false. Neither of these assertions is availing: the district court certainly did not invite Hornbostel to submit false or frivolous objections to the PSI; and whether the testimony was clear or not is irrelevant to the district court's finding that Hornbostel lied about the extent of his involvement in the conspiracy. Finally, Hornbostel merely asserts that he did not falsely or frivolously deny relevant conduct. However, as stated above, this is a factual determination to be made by the district court based on its finding as to the credibility of the evidence presented at the hearing.
 
 
 10
 Hornbostel devotes two sentences of his brief to the issue of a safety-valve reduction. These sentences read:
 
 
 11
 As a corollary, Mr. Hornbostel was denied a safety-valve reduction of two levels undr [sic] U.S.S.G. [ § ] 5C1.2 based upon virtually the same reason--his objection to what the government believed to be the correct quantities. Any consideration of a reduction of level for acceptance of responsibility should also take the safety-valve into consideration.
 
 
 12
 Obviously, he cites no case law and does not develop a legal argument. Therefore, he has waived this issue. See Kerr v. Farley, 95 F.3d 472, 481 (7th Cir.1996) (failure to develop argument results in waiver); Gagan v. American Cablevision, Inc., 77 F.3d 951, 965 (7th Cir.1996) (failure to develop and support an argument results in the waiver of that argument); Fed.R.App.P. 28(a)(6).
 
 
 13
 In any event, we review a sentencing court's safety valve decision for clear error. United States v. Ramirez, 94 F.3d 1095, 1099-1100 (7th Cir.1996). At issue here is whether Hornbostel established that he "truthfully provided to the government all the information and evidence [he] ha[d] concerning the offense" for which he was convicted. U.S.S.G. § 5C1.2(5). As discussed above, the district court did not clearly err in finding that Hornbostel lied about the extent of his involvement in the conspiracy. It necessarily follows that he did not truthfully provide all the evidence and information he had concerning his offense to the government. Therefore, the district court did not clearly err in denying Hornbostel a safety-valve reduction.[2]
 
 
 14
 For these reasons, the district court's judgment is AFFIRMED.
 
 
 
 [1]
 The district court found that 66 ounces of methamphetamine were attributable to Hornbostel. Specifically, Judge Shabaz found Magnuson to be a credible witness and, therefore, attributed 44 ounces based on her testimony. Further, the judge found that Brandt's testimony supported a finding that Hornbostel purchased 12 ounces from him, and that there was no testimony contradicting the PSI's recommendation as to the three ounces sold to Jody Berg on August 2, 1995. Finally, Judge Shabaz found that Hornbostel and Brandt had conspired to purchase seven ounces on August 12, 1995, and attributed that amount to Hombostel
 
 
 [2]
 Originally, Hornbostel raised an ineffective assistance of trial counsel claim. However, at oral argument, counsel withdrew this issue from our consideration. The district court found that 66 ounces of methamphetamine were