**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Theodore JOHNSON, Defendant–Appellant.**

**No. 00–2415.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 31, 2001.

Decided Feb. 14, 2001.

Before BAUER, COFFEY, DIANE P. WOOD, Circuit Judges.

## ORDER

Theodore Johnson pleaded guilty to one count of conspiracy to distribute cocaine base in violation of 21 U.S.C. § 846 and was sentenced to 360 months in prison, five years of supervised release, a $5,000 fine, and a $100 special assessment. In this direct appeal, Johnson argues that the district court clearly erred by not requiring the government to produce additional evidence supporting the presentence report's ("PSR") relevant conduct calculation and designation of Johnson as leader of the conspiracy pursuant to U.S.S.G. § 3B1.1. He also contends that the district court erred by denying him a downward adjustment under U.S.S.G. § 3E1.1(a) for acceptance of responsibility based on the court's determination that his objections to

the PSR were not made in good faith. We affirm.

Beginning in 1997, federal, state, and local law enforcement agents conducted an investigation into the distribution of crack cocaine in the Centralia, Illinois area. The two-year investigation utilized confidential informants, electronic surveillance, and controlled buys and resulted in the arrest and indictment of numerous individuals, including Johnson.

After Johnson pleaded guilty to one count of conspiracy to distribute cocaine base, a PSR was prepared using information from proffers of Johnson's co-defendants, interviews with other persons involved in the conspiracy, and an interview with FBI agent Rick Stonecipher. The PSR described a conspiracy in which Johnson and/or one or two co-defendants would purchase crack in Chicago. The crack would be brought to Centralia via car or Amtrak train, but Johnson would not travel with the couriers who transported the drugs. Once in Centralia, Johnson would distribute the crack for resale, often fronting the crack to individuals who would repay him once the crack had been resold. The PSR estimated that Johnson was responsible for approximately 39 kilograms of crack cocaine, and led the conspiracy (which involved more than five participants), recruiting accomplices, planning and organizing the trips to and from Chicago, and making the decisions. The PSR recommended a base offense level of 38, plus a four-level upward adjustment for Johnson's role as leader in the offense, and a three-level downward adjustment for acceptance of responsibility, totaling an offense level of 39.

Johnson then filed objections to the PSR, denying every paragraph which states that he possessed, sold, or purchased crack or conspired with anyone to distribute crack without providing any ad-

ditional information or evidence to refute the PSR's calculation. For example, objection number 14 states, "[r]ather than object to each specific statement of fact contained in paragraph 31 through 63, Defendant objects to all statements indicating that he was in possession of, sold or purchased crack cocaine and/or conspired with anyone for the purchase, possession or sale of crack cocaine contained in those paragraphs." Similarly, Johnson denied that he was the leader of the drug conspiracy, stating merely that he "objects to paragraph 64 of the Presentence Report wherein it states that he was leader of a drug conspiracy." The government moved to strike Johnson's objections, believing that Johnson merely denied his conduct without offering factual support, and that the objections constituted a false and frivolous denial of his relevant conduct for which an adjustment for acceptance of responsibility should be denied.

The district court then held a sentencing hearing at which FBI agent Stonecipher testified regarding his knowledge of Johnson's relevant conduct, including the probable amount of money Johnson—assuming he was the leader—would have received as a result of the drug conspiracy. Johnson did not testify. After hearing Stonecipher's testimony and Johnson's argument relating to his objections, the district court concluded that Johnson had not met his burden of producing evidence that undermined the PSR's information about relevant conduct. Furthermore, the court determined that the PSR contained sufficient indicia of reliability to support the conclusion that Johnson led a drug conspiracy with more than five participants. The district court also found that Johnson failed to meet his "minimal burden of production" in objecting to the PSR, and therefore his objections were frivolous and not brought in good faith. Accordingly, the district court accepted the recommenda-

tions contained in the PSR, denying him a three-level downward adjustment for acceptance of responsibility and increasing his base offense level by four levels for being the leader of the conspiracy.

 Johnson now appeals, first arguing that the district court clearly erred in finding that he did not meet his burden of proof when contesting the reliability of the PSR. A district court's determination of facts during sentencing is reviewed for clear error. *United States v. Hart,* 226 F.3d 602, 604 (7th Cir.2000). If a district court relies on information found in a PSR to sentence a defendant, the burden lies with the defendant to show that the PSR is unreliable or inaccurate. *See United States v. Taylor,* 72 F.3d 533, 543 (7th Cir.1995). The defendant, however, does not meet his burden of demonstrating that the PSR is inaccurate if he simply denies the PSR's contents. *See United States v. Purchess,* 107 F.3d 1261, 1268 (7th Cir. 1997). Rather, the defendant must produce "some evidence that calls the reliability or correctness of the alleged facts into question." *United States v. Mustread,* 42 F.3d 1097, 1102 (7th Cir.1994) (citation and internal quotations omitted).

In this case, Johnson contends that he met his burden of producing evidence regarding the PSR's unreliability by pointing out inconsistencies between Agent Stonecipher's testimony and the PSR's conclusion that he was the leader of the conspiracy. First, he believes that the PSR's conclusion that Johnson had not accumulated any assets is inconsistent with Stonecipher's testimony that Johnson would receive between 80–90 percent of the proceeds of the crack sales and that a drug dealer's profit margin would be between 50 and 150 percent. Thus, Johnson argues, the typical income of a crack conspiracy's leader cannot be squared with his lack of any discov-

ered assets. Second, Johnson suggests that a codefendant, Barry Dabney, may have been the leader of the conspiracy. He specifically points to Stonecipher's testimony that Dabney had assets of $15,000, bore some responsibility for purchasing the drugs from Chicago, and had additional responsibility for hiding the drugs in Centralia.

■ We disagree that these arguments represent inconsistencies in the PSR and believe that Johnson merely is suggesting another version of events. The PSR contains lengthy accounts of numerous drug buys and distributions in which Johnson played a leadership role in the conspiracy by directing the purchase, sale, and redistribution of the crack cocaine to his underlings. These accounts are based on several mutually corroborating sources, including proffers from Johnson's co-defendants, interviews with confidential sources and others involved with the conspiracy, as well as an interview with Agent Stonecipher. *See Taylor,* 72 F.3d at 543 ("mutually corroborating accounts" of relevant conduct found in PSR demonstrate PSR's reliability); *see also United States v. Zehm,* 217 F.3d 506, 516 (7th Cir.2000). Although nine people referred to Johnson as the "leader" of the conspiracy, and all of the accounts show that Johnson was directly responsible for well over 1.5 kilograms of crack, Johnson denied every single paragraph in the PSR that related to purchasing, distributing, or directing the purchase or distribution of crack, and he did so without explaining the basis for his objection or offering evidence to call the accuracy of these paragraphs into question. Agent Stonecipher's testimony regarding codefendant Dabney's role in the offense and the expected profits of a drug conspiracy leader addresses only a small part of the PSR's relevant conduct analysis, and Johnson

did not even attempt to discredit the portions of the PSR that clearly indicate Johnson as the head of the crack operation. Even assuming that this testimony could support an alternate explanation of the conspiracy and Johnson's role in it, the testimony does not refute the reliability of the PSR's conclusions. *See United States v. Gibson,* 155 F.3d 844, 847 (7th Cir.1998) ("If two permissible views of the evidence exist, the fact-finder's choice between them cannot be clearly erroneous."). In effect, Johnson objected to all of the conduct in the PSR that implicated him, and then argued that a codefendant's level of responsibility in the conspiracy coupled with Johnson's complete lack of funds preclude any conclusion that he was the leader of the conspiracy. This seems to be no more than an outright denial and thus Johnson did not meet his burden in calling the reliability of the PSR into question.

Johnson's second argument, that the district court clearly erred by not decreasing his base offense level for acceptance of responsibility, also lacks merit. To receive an adjustment for acceptance of responsibility, a "defendant must clearly demonstrate that he is entitled to this reduction by a preponderance of the evidence." *United States v. Howard,* 179 F.3d 539, 544 (7th Cir.1999). Additionally, "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." U.S.S.G. § 3E1.1, Comment. (n. 1(a)). The district court in this case determined that Johnson's objections to the PSR were mere denials of any conduct relating to the conspiracy, and thus his objections were false or frivolous. Therefore, the district court concluded, Johnson was not entitled to acceptance of responsibility. Because the district court did not clearly err in determining that Johnson's

objections were nothing more than mere denials, we also believe that the district court did not clearly err in denying him an acceptance-of-responsibility adjustment.

Johnson's sentence is AFFIRMED.