UNITED STATES of America,
Plaintiff–Appellee,

v.

Jeffrey Craig MORRISON,
Defendant–Appellant.

No. 99–6368.

United States Court of Appeals,
Sixth Circuit.

May 3, 2001.

Before BATCHELDER and CLAY, Circuit Judges, and POLSTER, District Judge.*

CLAY, Circuit Judge.

On January 5, 1999, Defendant Jeffrey Craig Morrison was charged in a one-count indictment with robbing the First Tennessee Bank located in downtown Chattanooga, Tennessee, in violation of 18 U.S.C. § 2113(a). Defendant was found guilty following a one-day jury trial in the United States District Court for the Eastern District of Tennessee on June 8, 1999, and was ordered to pay restitution and serve a sentence of sixty months imprisonment followed by three years of supervised release. He now appeals his conviction and sentence.

Specifically, Defendant challenges the sufficiency of the evidence supporting his conviction for bank robbery in violation of 18 U.S.C. § 2113(a). He also contests the district court's refusal to reduce his base

---

* The Honorable Dan A. Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

offense level for acceptance of responsibility under the United States Sentencing Commission, *Guidelines Manual* § 3E1.1 (1998). Defendant initially challenged the district court's denial of his request to instruct the jury that bank larceny, 18 U.S.C. § 2113(b), is a lesser included offense of bank robbery, 18 U.S.C. § 2113(a). But we decline to address this claim because Defendant has since conceded this issue in light of the Supreme Court's pronouncement in *Carter v. United States,* 530 U.S. 255, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000), that § 2113(b) is not, as a matter of law, a lesser included offense of § 2113(a). We now AFFIRM the district court's decision with respect to Defendant's remaining claims of error.

## I. SUFFICIENCY OF EVIDENCE

■ Defendant contends on appeal that the government presented insufficient evidence to support the district court's judgment of conviction on the bank robbery charge pursuant to 18 U.S.C. § 2113(a). "This court 'will reverse a [conviction] for insufficiency of evidence only if the judgment is not supported by substantial and competent evidence upon the record as a whole, . . . .'" *United States v. Beddow,* 957 F.2d 1330, 1334 (6th Cir.1992) (citing *United States v. Stone,* 748 F.2d 361, 363 (6th Cir.1984)). In *United States v. Davis,* 177 F.3d 552 (6th Cir.1999), we elaborated on the appropriate standard of review:

In reviewing a challenge to the sufficiency of the evidence, we must not weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury. Instead, we determine merely whether, after viewing the evidence in the light most favorable to the prosecution, and after giving the government the benefit of all inferences that could reasonably be drawn from the testimony, a rational trier of fact could find the elements of the crime beyond a reasonable doubt. *Id.* at 558 (cited in *United States v. Farrow,* 198 F.3d 179, 186 (6th Cir.1999)).

In review of the record and Defendant's arguments on appeal, we cannot say that the district court's decision to convict Defendant of bank robbery in violation of 18 U.S.C. § 2113(a) was not supported by substantial and competent evidence upon the record as a whole.

### A.

During Defendant's trial, the following facts came to light. On the morning of Tuesday January 5, 1999, Defendant left his home in the Harriet Tubman Housing Projects in Chattanooga, Tennessee. At approximately 11:35 a.m. he boarded a public transportation bus driven by a George C. Brown and headed to downtown Chattanooga. Defendant apparently introduced himself to Brown and rode quietly until the bus reached the downtown area. Brown later testified that Defendant got off the bus at approximately 11:45 a.m. in front of the Tivoli Theater on Broad Street, which is located across the street from the First Tennessee Bank.

Bank customer Roderick Hill testified at trial that Defendant crossed Broad Street, "stopped and looked around to see if anybody was looking and went to the side of the bank ... and put on some sunglasses and changed his hat and then walked back around and went on in the bank." (J.A. at 65–67.) Upon entering the bank, Defendant walked toward one of the teller windows and waited in line with the rest of the customers. When it was his turn to be served, Defendant approached the teller window operated by Katherine "Kathy" Thurman. Hill testified that he observed Defendant "leaning forward up in the window", and that he "could tell something was going on. [The teller's] eyes were

real, real big." (J.A. at 68.) Hill further indicated at trial that "[the teller] looked like she was scared to death like somebody had, you know, who knows, you know, what went on, but I know her eyes were big. She was hysterical, looks like she couldn't speak she was so scared, after he walked away she was still standing there like that." (J.A. at 73.)

After obtaining the money from the teller, Defendant left the teller's window, "balled up" the money in his right front pants pocket, exited the Broad Street door, looked back into the bank and "just walked off." (J.A. at 67–70.) Although the teller had over $8,000.00 under her control at the time of the incident, the bank's head teller, Sheila Anderson, testified that the bank's verified loss from the robbery was $1,436.00 of FDIC insured bank funds. (J.A. at 92.)

After Defendant left the bank, he removed his sunglasses and hat and went to a nearby drug store where he purchased a pack of cigarettes. (J.A. at 169.) He then purchased some beer and paid his rent of $143.00 in cash to the housing manager of the Harriet Tubman housing development. (J.A. at 104–106; 101.) Defendant then went to a neighbor's apartment.

At approximately 1:45 p.m. Defendant was arrested by FBI Special Agent James Melia at his neighbor's apartment. Agent Melia discovered approximately $1,607.00 in Defendant's front pants pocket as well as a bus schedule. (J.A. at 96–100.) After being advised of his *Miranda* rights, Defendant told Agent Melia that he had obtained the money from the First Tennessee Bank and that he had spent some of the money during the previous hour to pay his rent at the housing development. (J.A. at 101–02.) Approximately one hour later at the FBI office Defendant was again advised of his *Miranda* rights and confessed to the crime. Defendant also indicated

that he discarded the cap and sunglasses used during the crime into a garbage can somewhere between the First Tennessee Bank and an Eckerd drugstore. The hat and sunglasses were retrieved by a law enforcement agent later that afternoon. (J.A. at 108–10.)

Michael Boston, another bank customer in the bank lobby while the crime was committed, testified that Defendant "walked up and waited in line until his time . . ., then he was inside of the counter. The upper part of his body was on the inside of the counter . . . the teller was sitting back with a stare on her face and I said to myself he's going to rob the bank." (J.A. at 76–77.) Upon further examination, Boston testified that Defendant was leaning into the teller's counter space "farther in it that I would be in it." (J.A. at 74–78.) After Defendant left the window, Boston approached the same window and attempted to cash his check. He was then informed that the teller could not cash his check but that another teller would handle the transaction.

The bank teller involved in the crime. Katherine Thurman, provided the following testimony regarding the incident:

A. I finished with a customer, and as I was closing my drawer before I had a chance to call the next customer in line, I turned around and saw a man leaning into my window.

Q. What do you mean he was leaning into your window?

A. The window, it comes up, there is a marble like raised part on either side, creates like a square in the window, and he leaned forward to where both of his shoulders were inside in between in the square.

Q. Had you ever had anybody lean that far in your window before?

A. No.

Q. What kind of appearance did he have, what did you notice about him?

A. He was very scruffy, dirty in appearance. He had on a very bulky and large jacket.

. . . . .

Q. Did he say anything to you initially?

A. Yes, he said I'd like hundreds and fifties.

Q. And what did you do?

A. I hesitated waiting on him to produce a check or some type of transaction. And when I hesitated I just looked at him and that's when he leaned his head more towards me and slammed his hand down on the counter and told me "Now."

Q. What was his tone of voice like?

A. It was quiet but very serious.

Q. What was the tone of voice like when he slapped the counter and said "Now"?

A. I felt like he meant business, that he wanted me to hurry.

Q. Okay. What did you do?

A. I then turned and opened my drawer and I only had one $100 bill, so I pulled it out and went to slide it to him and told him at that time that that was all I had in the hundreds.

Q. Did you have any fifties?

A. No, sir.

Q. Did you tell him that?

A. I believe I just said that's all I have is in hundreds.

Q. Did he say anything in response?

A. He said give me your twenties.

. . . . .

Q. So he said gave me your twenties, you gave him your twenties. What happened next?

A. He folded the stack of twenties and pulled it towards him and kind of tucked it in his arm or inside of his jacket and then he turned to walk out.

. . . . .

Q. After the robbery, after that just happened which you just described, excuse me, what did you do?

A. I turned to the teller next to me and told her that I was just robbed. And she asked me to point out who it was and I pointed him out and we both watched him exit the bank.

Q. Which door did he leave?

A. The Broad Street exit.

Q. What was your state of mind at that point?

A. I was rattled, very nervous, couldn't believe it, I was just robbed.

Q. Why did you give this man the bank's money on that occasion?

A. When he came up to the window, like I said, I hesitated because I was waiting on him to produce some type of transaction and when he didn't, he slammed his hand down -

. . . . .

A. I felt like if I didn't that I may be harmed. He may have had a gun hidden in his jacket. And I didn't know, wasn't willing to take a chance on what may happen if I didn't.

Q. Do you consider yourself a timid person?

A. No sir.

(J.A. at 81–85.) Prior to the crime in question. Thurman had worked under the supervision of head teller Sheila Anderson for approximately six months. Anderson described Thurman as "very assertive, very strong ... strong personality, opinionated." Immediately following

the incident, however, Anderson described Thurman's demeanor as "very upset, very nervous." In fact, Thurman was so upset that she was allowed to go home early. (J.A. at 103.)

Thurman further testified on cross-examination by defense counsel that Defendant did not verbally threaten to hurt, hit, or kill her; nor did he indicate that he had a weapon or even raise his hand towards her:

Q. And when you talked to my investigator you told my investigator that this person was not acting violently, correct?

A. Right.

Q. He, in fact, the way you described him was perhaps forceful, to the point, something along those terms?

A. Yes.

Q. Okay but he didn't do anything violent to you, didn't indicate he was going to do anything violent to you?

A. When he slammed his hand down on the counter.

Q. And how loud was that?

A. As loud as it sounds when a hand slaps against marble.

Q. Pretty loud so that other people within the bank should be able to hear it?

A. It was loud enough that it made me jump. It made me back away from him.

(J.A. at 87–88.)

### B.

■ During the trial, Defendant admitted that he unlawfully took money from the First Tennessee Bank. But he maintained that he did not commit bank robbery as defined in 18 U.S.C. § 2113(a) because his theft did not include force, violence or intimidation as required under that statute. The federal bank robbery statute provides that:

> Whoever, *by force and violence, or by intimidation,* takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny—Shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 2113(a) (emphasis added).

Defendant concedes that the government proved almost all of the elements of the crime of bank robbery at trial. But he claims that because he did not make any verbal or symbolic threats, and did not give anyone a particular reason to think he was armed when he entered the bank, that the government failed to prove that he acted in an "intimidating manner." This Court has defined intimidation for purposes of § 2113(a) as "conduct and words calculated to create the impression that any resistance or defiance by the [teller] would be met by force." *United States v. Perry,* 991 F.2d 304, 310 (6th Cir.1993) (alteration in original) (citing *United States v. Jones,* 932 F.2d 624, 625 (7th Cir.1991)). Our opinion in *United States v. Robinson,* 527 F.2d 1170 (6th Cir.1975),

is also instructive. In that case we held that a jury would be justified in finding intimidation where a man clothed in a "leather coat" (so that a weapon could presumably be concealed) after waiting somewhat nervously in line, attempts, at best, a sham commercial transaction, and commands with the imperative "give" a teller to turn over "all [of her] money" while "sliding a 'black pouch' across the counter to her...." *Id.* at 1171–72 (citation omitted); *see also United States v. Gipson,* No. 98–5571, 1999 WL 519327, at **1 (6th Cir. July 14, 1999). In *Robinson,* as in the instant case, the defendant did not have a weapon and made no explicit threats of harm. *See id.* Nonetheless, this Court concluded that the defendant had committed the crime through intimidation. *See id.* at 1172 (holding that neither the display of a weapon nor an explicit threat is a *sine qua non* of intimidation).

Under the guidance of *Robinson,* we believe that although in the instant case Defendant did not display a weapon or make an explicit threat, an ordinary person in the teller's position could infer an implicit threat from Defendant's acts. Defendant leaned far into the teller window, demanded money in particular denominations, slapped his hand on the marble counter loud enough such that the sound made Thurman jump, (J.A. at 88.), and indicated that he wanted the money "Now.'" (J.A. at 83.) Defendant claims that although his demeanor was "forceful and to the point" that he was not violent, and therefore, not intimidating. But this argument obfuscates the distinction between the two types of taking that can lead to guilt under 18 U.S.C. § 2113(a): force and violence *or* intimidation. Thus, the fact that Defendant was not actually violent is irrelevant. What matters is whether Defendant's conduct was reasonably calculated to intimidate Thurman into giving him the money.

Thurman testified that she was afraid and feared that she might be physically harmed. Other witnesses testified that Thurman appeared to be afraid. In fact, she was so shaken that she went home early on the day of the robbery. Clearly her emotional state was a result of her fear of being harmed by Defendant. Such a fear was reasonable given Defendant's appearance and the fact that he was wearing a "very bulky jacket" that could have concealed a weapon. Given these facts, we believe that a reasonable juror could find that Defendant's conduct was reasonably calculated to put the teller in fear of bodily harm as well as to create the impression that resistance would be overcome through the use of force. Other circuits have reached the same conclusion based on similar facts. *See, e.g., United States v. Hopkins,* 703 F.2d 1102, 1103 (9th Cir.1983) (finding intimidation in the defendant's use of a written or verbal demand for money which contained no explicit threat); *United States v. Slater,* 692 F.2d 107, 109 (10th Cir.1982) (finding intimidation in a defendant's "forceful and purposeful" behavior).

Defendant cites to decisions of other circuits to support his claim, including *United States v. Wagstaff,* 865 F.2d 626 (4th Cir.1989), *United States v. Smith,* 973 F.2d 603 (8th Cir.1992), and *United States v. Higdon,* 832 F.2d 312, 315 (5th Cir. 1987), *cert. denied,* 484 U.S. 1075, 108 S.Ct. 1051, 98 L.Ed.2d 1013 (1988). But at most, these cases only add the proviso that the "subjective courageousness or timidity of the victim is irrelevant"; rather "the acts of the defendant must constitute an intimidation to an ordinary, reasonable person." *Higdon,* 832 F.2d at 315. In the instant case, Defendant has not argued and there is no indication that Thurman's fear was due to any timidity. Rather, the unrefuted testimony on the record shows that she was not a timid person at all, but

an assertive and aggressive person. Thus, the fear she exhibited appears to have been reasonable under the circumstances. We therefore hold that the district court did not err in entering a judgment of conviction for bank robbery.

## II. ACCEPTANCE OF RESPONSIBILITY

Defendant also challenges the district court's denial of his request for a reduction in his base offense level under the United States Sentencing Guidelines for acceptance of responsibility pursuant to USSG § 3E1.1. He contends that due to the unsettled nature of the law prior to the Supreme Court's pronouncement in *Carter*, he had a good faith belief that his admittedly criminal acts should be prosecuted for bank larceny and not bank robbery. Thus, Defendant contended at trial that he was not guilty of bank robbery. But this belief rested upon the idea that Defendant did not "intimidate" the bank teller, which was a factual element of the crime of bank robbery under § 2113(a). In this manner we believe that he contested not only the relevancy of the statute, but also his factual guilt. We therefore do not believe that the district court erred in finding that acceptance of responsibility credit under USSG § 3E1.1 was not warranted.

### A.

The United States Sentencing Commission, *Guidelines Manual* § 3E1.1 provides for a two-level reduction in a base offense level where the defendant "clearly demonstrates acceptance of responsibility for his offense."[1] Application Note 1 to § 3E1.1 lists eight factors that a district court may consider in determining the appropriateness of an adjustment.[2] Those factors in-

1. The reduction provision provides:
 (a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.
 (b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:
 (1) timely providing complete information to the government concerning his own involvement in the offense; or
 (2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently, decrease the offense level by 1 additional level.
 USSG § 3E1.1 (1998).

2. The Commentary to USSG § 3E1.1 provides:
 1. In determining whether a defendant qualifies under subsection (a), appropriate considerations include, but are not limited to, the following:
 (a) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct). Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility;
 (b) voluntary termination or withdrawal from criminal conduct or associations;
 (c) voluntary payment of restitution prior to adjudication of guilt;
 (d) voluntary surrender to authorities promptly after commission of the offense;
 (e) voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;
 (f) voluntary resignation from the office or position held during the commission of the offense;

clude "truthfully admitting the conduct comprising the offense(s) of conviction," "voluntary surrender to authorities promptly after commission of the offense" and "voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense." A defendant is entitled to an additional one-level decrease if (1) he qualifies for the two-level decrease, (2) prior to that decrease his offense level is Level 16 or greater, and (3) he "assisted authorities in the investigation or prosecution of his own misconduct by [either] timely providing complete information to the government concerning his own involvement in the offense [or] timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently[.]" USSG § 3E1.1(b). *United States v. Jeter,* 191 F.3d 637, 639 (6th Cir.1999).

 A defendant has the burden of demonstrating that he is entitled to a reduction of his base offense level for acceptance of responsibility under USSG § 3E1.1. *United States v. Walker,* 182 F.3d 485, 487 (6th Cir.1999) (citing *United States v. Mahaffey,* 53 F.3d 128, 134 (6th Cir.1995)). The defendant must prove that a reduction for acceptance of responsibility is appropriate by a preponderance of the evidence. *United States v. Benjamin,* 138 F.3d 1069, 1075 (6th Cir.1998) (citing *United States v. Williams,* 940 F.2d 176, 181 (6th Cir.1991)). In most cases, acceptance of responsibility is indicated by entering a plea of guilty. *Cf. Tilford,* 224 F.3d at 867; *U.S. v. Childers,* 89 F.3d 562, 563 (6th Cir.1996); *United States v. Wolfe,* 71 F.3d

611, 616 (6th Cir.1995); *United States v. Vance,* 62 F.3d 1152, 1159 (9th Cir.1995) (all invoking the principle that while a guilty plea does constitute significant evidence of acceptance, such acceptance of responsibility may be outweighed by other conduct of the defendant inconsistent with acceptance). The importance of a timely guilty plea is reflected in Application Note 2 to USSG § 3E1.1, which provides:

> This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

USSG § 3E1.1, cmt. n. 2.

 As the above-quoted language indicates, the fact that a defendant proceeds to trial does not, of itself, render him ineligible for the offense level reduction. But in order to obtain the reduction in such a situation, a defendant's case must fall within one of the "rare situations"

---

(g) post-offense rehabilitative efforts (e.g., counseling or drug treatment); and
(h) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

USSG § 3E1.1, cmt. n. 1.

mentioned in Note 2. "In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct." *United States v. Paredes–Batista,* 140 F.3d 367, 379–80 (2d Cir.1998).

■■■ We ordinarily review a trial court's conclusion that a defendant is not entitled to a sentence reduction for acceptance of responsibility, generally a factual question, under the clearly erroneous standard. *See* 18 U.S.C. § 3742; *United States v. Tilford,* 224 F.3d 865, 867 (6th Cir.2000). But where "the only issue presented is the propriety of the application of the adjustment to uncontested facts," a question of law is presented and this Court reviews *de novo* the trial court's acceptance of responsibility determination. *See United States v. Childers,* 86 F.3d 562, 563 (6th Cir.1996).

### B.

■■■ When he was arrested by the FBI, Defendant waived his *Miranda* rights and admitted stealing money from the First Tennessee Bank. (J .A. at 168.) He assisted the FBI agents in investigating his crime by telling them where they could find the hat and sunglasses that he used as a disguise during the commission of the crime. (J.A. at 169.) In addition, Defendant's counsel indicated that the facts of the case were uncontested and that the issue in the trial was "whether or not [Defendant's] actions fit the crime of robbery as it will be defined in the [jury] instructions." (J.A. at 162.) Specifically, defense counsel indicated that "the central issue of [the] case . . . was whether or not the incident occurred through the utilization of intimidation." (J.A. at 162.) De-

fendant claims that he was consistent with this theory throughout the trial and that his trial counsel reminded the jury during closing argument that "the question in the case is whether or not the intimidation element has been met." (J.A. at 167.)

Following trial, Defendant along with his counsel, met with a United States Probation Officer to assist in the preparation of the Presentence Investigation Report ("PSIR"). At that time Defendant again admitted his conduct and even submitted a letter to the court expressing his contrition.[3] But the probation officer determined that Defendant was not entitled to a reduction of his base offense level for acceptance of responsibility. Specifically, the probation officer indicated that:

> Mr. Morrison exercised his right to trial in this case. Although he admitted his commission of the offense to investigating officers, he has contended that he did not really "rob" the bank, rather that he "Asked for the money" and was given it. The defendant has not demonstrated acceptance of responsibility for his commission of this offense. As a result, he will not receive an adjustment pursuant to USSG § 3E1.1.

(PSIR, J.A. Vol 2 at 125.) Defendant objected to this recommendation and argued his case before the district court during the sentencing hearing. The district court overruled Defendant's objection and adopted the findings of the presentence report indicating that he did not admit all of the facts necessary to establish eligibility for the acceptance of responsibility reduction:

> The defendant, while he admitted some of the facts, of course, did not admit that he acted in an intimidating manner, that was the issue in this case. And it was a factual issue that the jury had to decide

---

**3.** Inasmuch as this letter reflects Defendant's post-trial conduct, we decline to consider it in determining whether he has accepted responsibility under the "rare exception" argument.

before it could come to a conclusion that by beyond a reasonable doubt the defendant committed the bank robbery offense.

(Sentencing Hearing Transcript, J.A. at 111.)

We find no error in this holding. Defendant argues that his pre-trial cooperation is indicative of his acceptance of responsibility. Yet he also contends that he did not deny the underlying facts at trial; rather he argues that he admitted the operative facts from the beginning but merely asserted that these facts did not legally constitute "intimidation" within the meaning of 18 U.S.C. § 2113(a). Defendant did cooperate when confronted by the authorities. But we believe that by continuing to deny that he intimidated anyone during the robbery Defendant challenged not only the application of the statute, but also his factual guilt. In light of this finding, his pretrial cooperation is insufficient to establish eligibility for the acceptance of responsibility credit.

In so holding we distinguish the instant case from those cases holding that the district court should not deny the reduction for acceptance of responsibility simply because the defendant challenges a legal conclusion drawn from facts the defendant admits. *See, e.g., United States v. Fells*, 78 F.3d 168 (5th Cir.1996). In *Fells* our sister circuit held that the denial of a reduction under USSG § 3E1.1 was inappropriate where a defendant attacked venue, but never disputed any material fact, admitted the underlying facts at trial and argued that those underlying facts did not legally constitute "possession" within the relevant jurisdiction. *Id.* at 171–72. We believe the instant case is more on point with *United States v. Purchess*, 107 F.3d 1261 (7th Cir.1997). In that case the court held that a defendant's putative legal challenge was complicated by the fact that, in

order to make his "legal" argument, defense counsel contested two facts concerning conduct the court eventually ruled was "relevant." *Id.* at 1267. The court further found that these factual challenges were " 'frivolity,' thus depriving [the defendant] of the acceptance of responsibility reduction." *Id.* Here, too, Defendant's challenge to the bank robbery charge flew in the face of the clear evidence that he intimidated the bank teller. *See* USSG § 3E1.1, cmt. n. 1(a) (stating that a defendant who frivolously contests relevant conduct that the court later determines to be true has acted in a manner inconsistent with acceptance of responsibility).

The instant case is also analogous to *United States v. Garcia*, 917 F.2d 1370 (5th Cir.1990). There the Fifth Circuit upheld a sentencing court's refusal to reduce a defendant's base offense level where the government was required at the defendant's trial to prove not that a statute was constitutional or applicable, but that the defendant committed the acts for which he was indicted. In the instant case, Defendant has already admitted that he took the money from the bank, but he also contended that he did not intimidate the bank teller. Forcing the government to prove the factual element of intimidation and that the admitted acts legally constituted "intimidation" is tantamount to forcing the government to prove that the defendant committed the acts for which he was indicted.

Defendant's actions also fall within the ambit of the Eighth Circuit's holding in *United States v. Peery*, 977 F.2d 1230 (8th Cir.1992). In that case the court determined that while one of the defense theories rested on the applicability of a statute to his conduct, the defendant was properly denied acceptance of responsibility credit because he also argued that he possessed a good faith belief that he was authorized to

commit the acts for which he was being tried. The defendant in *Peery* developed this theory of defense during his opening argument, during the trial itself, and during his closing argument. For these reasons, the Court of Appeals found, as we do in the instant case, that the trial focused not only on the relevancy of the statute to the defendant's conduct, but also on his factual guilt. *See id.* at 1234–35.

## C.

▮▮▮▮▮ Defendant also contends that in denying credit for acceptance of responsibility the district court impermissibly relied upon on the fact that Defendant had been convicted of bank robbery in the past. In denying credit for acceptance of responsibility the district court judge made the following statement:

I don't think this is just a case where the defendant challenges a legal interpretation of the facts that he admits because he didn't admit all of the facts as [the government] points out.

And I think also, I would have to say that due to the information that appears in the presentence report I might view the defendant's position here with somewhat more sympathy if this was the first time that he did this, but as we can see from the presentence report, he's done this before.

And, you know, his position of, well he didn't really think that there was any intimidation here because he thought that since the bank tellers are instructed to hand over the money that they would just do it and he wouldn't have intimidated them, I don't think that's—I just don't buy that. And I don't buy, certainly if he thinks that he can continue to do this and just be charged with bank larceny or convicted of bank larceny.

(Sentencing Hearing Transcript, J.A. at 175.) We acknowledge that in determin-

ing whether a defendant has accepted responsibility, district courts should consider remorse for specific criminal behavior and not for "illegal conduct" generally. *United States v. Morrison,* 983 F.2d 730, 734 (6th Cir.1993) (holding that criminal activity committed after an indictment but before sentencing, which is distinct from the crimes for which a defendant is being sentenced, may not be considered in determining whether a defendant has accepted responsibility). But we do not believe that the sentencing judge's statement indicates that he relied upon Defendant's past criminal behavior as a basis for denying acceptance of responsibility credit. Instead, the judge's language seems to reiterate the fact that he simply did not find credible Defendant's contention that he was making a good-faith challenge at trial to the legal interpretation to be drawn from uncontested facts. Apparently, the sentencing judge's doubt regarding the merits of Defendant's defense was driven in part by the fact that Defendant also characterized his previous bank robberies as not constituting efforts to threaten or intimidate. These previous attempts to so characterize his robberies highlight the unpersuasiveness of Defendant's claim that he proceeded to trial on the good faith belief that his actions did not constitute intimidation in the instant case. Thus, contrary to Defendant's argument on appeal, the sentencing judge did not hold Defendant's prior crimes against him in denying credit for acceptance of responsibility; rather, the court merely determined that Defendant's claim that his actions in committing the instant crime did not involve threats or intimidation was less credible when considered in light of Defendant's prior history of committing robberies and claiming that the robberies did not involve threats or intimidation. *Cf. United States v. Seratt,* No. 95–2988, 1996 WL 230053, at **2 (8th Cir. May 8, 1996) (upholding denial of ac-

ceptance of responsibility credit under USSG § 3E1.1 despite reference to prior convictions where the record indicated that the district court considered the defendant's past record "only insofar as it was relevant to the determination of whether [he] was remorseful for the instant offense or was instead essentially manipulating the justice system"). Given the discretion afforded to sentencing judges in determining whether a defendant has accepted responsibility, we do not believe that the district court's judgment may be challenged on this ground.

### III.

In light of the testimony on the record, as well as the clear legal precedent, and drawing all inferences in favor of the government, we find that Defendant has not given this Court any reason to overturn his conviction. In addition, we hold that the frivolous nature of Defendant's appeal and his claims of innocence of bank robbery supported the district court's denial of credit for acceptance of responsibility. We therefore AFFIRM the district court on all claims of error.