NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0255n.06

No. 16-5370

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 04, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| DANIEL BRUCE LADEAU, | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:     SUHRHEINRICH, BATCHELDER, and STRANCH, Circuit Judges.

SUHRHEINRICH, Circuit Judge:  Defendant Daniel Ladeau appeals his conviction and sentence for conspiracy to possess child pornography, in violation of 18 U.S.C. § 2252A(b)(2). We affirm.

**I.**

On May 22, 2009, Defendant's younger brother, David Ladeau (David), was charged with possession of child pornography and detained pending trial.  In March 2010, the brothers began communicating in writing, partially in code.  In April 2010, an employee of the detention center where David was being held intercepted the letters, and a special agent with Homeland Security Investigations (HSI) deciphered the code.  In the letters the brothers discussed their mutual sexual interest in boys as well as how to obtain and conceal child pornography.  ID# 2730-2819, 2820-90.

On August 27, 2010, law enforcement executed a search warrant at Defendant's residence and interviewed him later that day. ID# 2688 (PSR). Defendant confessed, admitting that he used computers and his smart phone to search the internet for child pornography, which he collected onto thumb drives. He also told the officers where he hid the thumb drives. Defendant ultimately[1] was charged with conspiring with David to possess child pornography from March 24, 2010 to August 23, 2010, after David pleaded guilty to the same charge. The district court granted Defendant's motion to suppress his confession and the thumb drives, so the government established the existence of the conspiracy through David's testimony at trial and the letters. The district court denied Defendant's motion for judgment of acquittal, rejecting Defendant's argument that the evidence at most established that David aided and abetted Defendant and did not support a conspiracy charge. The jury convicted Defendant of one count of conspiracy to possess child pornography. Defendant was sentenced to 115 months, which was five months below the applicable guidelines range and the statutory maximum sentence. ID# 2645. This appeal followed.

## II.

### A.

Defendant contends that there was no conspiracy because there was no agreement between him and David; rather David merely offered help and encouragement concerning a common interest.[2]

---

[1] Defendant was originally charged with possession of child pornography but, after his confession was suppressed as involuntary, he was charged with conspiracy to receive child pornography in a superseding indictment. The district court dismissed that indictment based on prosecutorial vindictiveness, and we affirmed. *See United States v. Ladeau*, 734 F.3d 561 (6th Cir. 2013). This litigation followed.

[2] The district court instructed the jury on the distinction between conspiracy and aiding and abetting. ID# 1962-63. Defendant does not challenge the jury instructions.

We review challenges to the sufficiency of the evidence de novo. *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011). We ask whether, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury." *Fisher*, 648 F.3d at 450 (citation omitted). "Substantial and competent circumstantial evidence by itself may support a verdict and need not remove every reasonable hypothesis except that of guilt." *Id.* (quoting *United States v. Lee*, 359 F.3d 412, 418 (6th Cir. 2004)). We are even less likely to disturb a jury verdict after the district court has thoroughly considered and denied a motion of acquittal. *Id.*

The crime of conspiracy requires an agreement, but it need not be formal. A "'tacit or mutual understanding among the parties' is sufficient" and it may be proven by direct or circumstantial evidence. *See id.* (citation omitted). The crime of aiding and abetting requires a defendant to associate himself with a criminal venture that he seeks, by his action, to make succeed. *United States v. Knox*, 839 F.2d 285, 294 (6th Cir. 1988). But he need not do so by virtue of an agreement. *See United States v. Giovannetti*, 919 F.2d 1223, 1230 (7th Cir. 1990) ("[Y]ou can be an aider and abettor of an offense without being a co-conspirator of the principal offender, if for example you assist the offender without having agreed to do so—he might not even be aware of your assistance."). Aiding and abetting and conspiring are not mutually exclusive; the same evidence will typically support both crimes. *United States v. Vasquez*, 677 F.3d 685, 695 (5th Cir. 2012).

Defendant claims the evidence established simply that (1) prior to the indictment period, David told Defendant about a couple of websites where he could find erotic images of boys;

(2) while David was in jail, Defendant visited those sites and told David about them; (3) David encouraged Defendant to take further, sophisticated steps to find images of child pornography on the internet; and (4) Defendant expressly rejected David's advice, saying he wanted only what came easy. In other words, all David did was help and encourage Defendant with the hope that he would succeed, but did not agree to do so. Appellant's Br. at 22.

We find that a rational jury could have found beyond a reasonable doubt that Defendant and David conspired to possess child pornography based on the evidence presented at trial. David and Defendant were brothers. David stated that he was close to his brother and looked up to him, sometimes as a father figure. ID# 1786-87, 1792, 1828. They openly shared a sexual interest in minor boys and child pornography that predated the conspiracy. ID# 1796, 1828. Their correspondence and David's testimony supports defendant's conspiracy conviction.

David believed that Defendant was trying to get his help to find child pornography online. ID# 1796. David was an experienced computer user, having "spent years . . . "[c]ollecting child pornography," ID# 1816, and Defendant lacked that knowledge. ID# 1791-92, 1796, 1816, 1828. David acknowledged that he was engaging in risky behavior, but said that he did it anyway because he wanted to help his brother. ID# 1828. He also stated that the letters helped him deal with his pretrial detention. ID# 1794, 1827.

David explained that the two brothers created a code so that they could keep their communications secret. ID# 1795-96; *see also* ID# 1815 (David's description of Exhibit 16, where Defendant agrees to keep the code "the way it is," and suggests that "we just need to try harder and practice [the letters of the alphabet they were mixing up] especially hard"). As the government asserts, a reasonable jury could easily conclude that the joint "effort required to create the  secretive code and to use it to specifically to discuss finding child pornography,

demonstrates a meeting of the minds between the defendant and his brother." Appellee's Br. at

24.

> And David testified to this meeting of the minds:

> Q    . . . What was the agreement and understanding that you had with your brother?
> A    There was an understanding that he would at some point get some child pornography.
> Q    And your part of the agreement was to do what?
> A    Part of the understanding between him and I was I would be giving him information on how to go about doing this.
> . . .
> Q    Did part of the agreement have to do with not getting caught?
> A    It was an understanding that we hopefully wouldn't—neither of us would be caught.

ID# 1826-27. This testimony, from a pleading codefendant, also supports the jury verdict. *See United States v. Christian*, 786 F.2d 203, 214 (6th Cir. 1986) (stating that when a pleading codefendant testifies regarding the specific facts underlying the crimes, "it is reasonable to believe that the jury uses the testimony regarding the facts to convict the codefendants and the testimony regarding the guilty plea to assess the witness' credibility"). Furthermore, this Court has repeatedly held that "[t]he uncorroborated testimony of an accomplice alone may support a conviction." *United States v. Wettstain*, 618 F.3d 577, 583 (6th Cir. 2010). In short, while the jury could have decided that David was merely helping and encouraging Defendant, there is sufficient circumstantial evidence of an understanding or agreement for a jury to find a conspiracy.

The letters, which David verified and explained at trial, also demonstrate the existence of an agreement that David would help his brother find child pornography online. David testified that the two exchanged approximately 80 letters in six months (26 were introduced at trial). ID# 1756, 1795. Although Defendant never directly asked David how to find child pornography on

the internet, the letters demonstrate that he sought advice on that topic from David. For example, Defendant asked David "what did you do to get those top quality pix you got?" ID# 2813 (Ex. 13)[3]. In other letters, Defendant described his inability to find material, complaining that he had "been trying for months [with] no luck" to download pornographic pictures of children onto his flash drive, and had "tried downloading software, going to sites, connecting phone to PC, etc., and always [ran] into a roadblock" because he "really [had] a problem with all this high tech stuff." ID# 2869 (Ex. 25). David testified that he understood these communications as a request by Defendant for help in his quest to find child pornography online. ID# 1796.

David, for his part, instructed Defendant, primarily in code, on ways to find child pornography and download it. One letter is particularly illustrative. In it, David suggests that Defendant look up free newsgroups and locate a news reader in order to download the child pornography.[4] ID# 2782 (Ex. 7). He also offered Defendant specific search terms to try, including "boy lovers," "man boy," and "preteen boys." ID# 2783 (Ex. 7). When Defendant complained about the library's security protections, David suggested Defendant try different libraries and search in newsgroups, using searches such as "alt.binaries.clouds," because they are "big and much safer." ID# 2832 (Ex. 17). Defendant, in turn, often reported his findings—how he found the child pornography and its content. ID# 2742, 2744, 2743, 2745, 2748, 2774, 2775, 2776, 2777, 2822,2862-65. Defendant also expressed to David his fear of getting caught. ID# 2774-77, 2801-02, 2814-15.

In other words, the "dialogue" was not merely one-sided communication by David offering encouragement and advice; Defendant actively and repeatedly solicited David's help,

---

[3] References to Ex. refer to United States Trial Exhibits.

[4] David explained that newsgroups "are groups that have various topics and subjects in it, and there's also groups that are – they also contain groups that have images and videos of child pornography." ID# 1817.

albeit implicitly, and David frequently supplied advice. From these extensive, intense written interactions, a jury could have reasonably concluded that the brothers had an agreement whereby David would help Defendant find and download child pornography.

To be sure, Defendant did not always take David's advice. He rejected David's suggestion to seek out more distant libraries, stating that he wanted what "comes EZ," explaining that he did not know what he was doing and wasn't "ready to go to prison just yet." ID# 2840 (Ex. 19). He also rejected David's idea of moving to another country, or renting a motel room to use the internet.[5] *Id.* And yet in his next letter to David, Defendant reported that he had "found some interesting pix of flowers"[6] on addresses associated with "alternative boys and also exceptional boys." He noted that the server had aborted the sites David had previously given to him. ID# 2843-46 (Ex. 20). But Defendant also took David's advice. He reported that he went to a site that David "gave [him] a way back . . . some photo share site with the words binaries and boy in it." ID# 2745 (Ex. 2). Defendant also accepted David's suggestion to try other libraries, because he admitted that he had tried the Nashville public library but could not acquire "even simple boy model pix." ID# 2831 (Ex. 17), ID# 2840 (Ex. 19). As the district court noted in denying Defendant's motion for acquittal, just because Defendant did not follow all of David's suggestions does not mean that the two did not have an agreement, especially since in other letters Defendant indicated that he followed David's advice and described what he found. ID# 1869. The conspiracy was to possess child pornography, not to use a specific method or access a particular website.

---

[5] David testified that "there are hundreds of countries where this stuff is not illegal." ID# 1818. He also explained that "there's places where you can" "wirelessly connect" to the internet without being tracked. ID# 1818.

[6] Defendant and his brother referred to young boys as "flowers."

Defendant claims that *United States v. Falcone*, 311 U.S. 205 (1940), and *United States v. Giovannetti*, 919 F.2d 1223 (7th Cir. 1990), support his assertion that the evidence in this case establishes nothing more than aiding and abetting. However, those cases lack a co-conspirator's testimony that he had an understanding with the Defendant to help him find and download child pornography. *Cf. Falcone*, 311 U.S. at 206-11 (sellers of sugar and yeast who knew that materials were being used in illicit distilling operations were not guilty of conspiracy because they lacked knowledge that buyers belonged to the conspiracy); *Giovannetti*, 919 F.2d at 1229 (it was jury question whether landlord, charged with aiding and abetting gambling operation for renting his house to gamblers, had knowledge and was actually part of gambling conspiracy). *United States v. Tyler*, 758 F.2d 66, 68-70 (2d Cir. 1985), doesn't advance Defendant's position either. There the government showed merely that the defendant helped a willing buyer locate a willing seller of drugs on one occasion, and, although guilty of aiding and abetting, was not guilty of conspiracy. *See also United States v. Garcia*, 151 F.3d 1243, 1245-47 (9th Cir. 1998) (gang members who actively fought rivals together were not guilty of conspiracy). Finally, *United States v. Pulgar*, 789 F.3d 807 (7th Cir. 2015), cited in Defendant's reply brief, is also distinguishable. There the Seventh Circuit held that repeat drug sales between a buyer and seller over an eleven-year period, without more, did not establish the existence of a conspiracy in part because the defendant never expressed approval or disapproval of what his buyer eventually charged to resell the cocaine and failed to establish that the defendant and his buyer "engaged in credit transactions during their business relationships." *Id.* at 814; *see also id.* at 815-16 ("Without evidence of repeated fronting, sales on consignment, provisioning of tools or supplies, warnings of threats to the business, or some other signal that they enjoyed a heightened level of

trust indicative of a drug-distribution conspiracy, we cannot infer anything nefarious from this friendship.")

The letters between Defendant and his brother and David's testimony easily support the existence of an agreement or understanding that David would help his brother find child pornography online.[7]  Based on the evidence presented at trial, a rational jury could have found that Defendant and David conspired to possess child pornography.

**B.**

Next, Defendant contends that the district court erred in denying him a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.  "The factual aspect of a determination that a defendant has accepted responsibility should be accorded great deference and should not be disturbed unless clearly erroneous."  *United States v. Hollis*, 823 F.3d 1045, 1047 (6th Cir. 2016).  "However, if the only issue presented is the propriety of applying the reduction to the uncontested facts, [a legal issue,] the decision is reviewed de novo."  *United States v. Reaume*, 338 F.3d 577, 582-83 (6th Cir. 2003) (question of whether intent was required under bank fraud statute was a question of law, but the question of whether defendant harbored requisite intent under statute was a question of fact reviewed under clear error standard).

Although a "conviction by trial . . . does not automatically preclude a defendant from consideration," a defendant who is tried and convicted is entitled to credit for acceptance of responsibility only in "rare situations," such as "where a defendant goes to trial to assert and

---

[7] Defendant attempts to distinguish an agreement to obtain images of "child erotica," from an agreement to possess child pornography.  First, the brothers did not distinguish between the two in their letters.  Second, the record contains evidence that Defendant and his brother sought material that is properly characterized as child pornography. *See*, *e.g.*, ID# 2794 (Ex. 9), 2846 (Ex. 20). *See* 18 U.S.C. § 2256(2)(B)(8); *see generally United States v. Brown*, 579 F.3d 672, 680 (6th Cir. 2009) (applying six-factor test for term "lasciviousness" in 18 U.S.C. § 2256(2)(A)(v)).  Finally, as the district court held, this was not "a conspiracy to hit a particular site.  This is a conspiracy about any child pornography sites."  ID# 1868.

preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)." U.S.S.G. § 3E1.1, cmt. n. 2.

Defendant believes that he should have received the reduction because he "never denied his conduct," which allows him to characterize his claim as a legal issue. Appellant's Br. at 37. This assertion is not entirely correct. Defendant admitted to seeking and possessing child pornography, but he denied that David agreed to help him. Thus, he put the government to its proofs at trial. *See generally United States v. Branham* 460 F. App'x 538, 546 (6th Cir. 2012) (reduction of acceptance of responsibility was not warranted where defendant admitted some charges but challenged conspiracy at trial). Indeed, as the government points out, lack of proof of an agreement, including a challenge to the credibility of David's testimony about their understanding, is "the entire thrust of his primary argument on appeal." Appellee's Br. at 31. Because Defendant challenged an essential factual element, as well as the legal application of the conspiracy statute, the district court did not commit clear error in finding that he was not entitled to the reduction. *Cf. United States v. Morrison*, 10 F. App'x 275, 285 (6th Cir. 2001) (defendant's continued denial that he intimidated anyone during bank robbery challenged not only the application of bank robbery statute, but also his factual guilt, and the district court did not err in denying acceptance of responsibility reduction). For this reason, the cases he cites are distinguishable. *See United States v. Fells*, 78 F.3d 168, 172 (5th Cir. 1996) (denial of acceptance of responsibility was improper although defendant "freely admitted all the facts" but argued at trial that the underlying facts did not legally constitute "possession" within relevant jurisdiction); *United States v. Fleener*, 900 F.2d 914, 917-18 (6th Cir. 1990) (awarding acceptance of responsibility reduction where defendant admitted guilt but went to trial to raise

legal entrapment defense and rejecting government's argument that defense precluded application of § 3E1.1). In short, the district court did not clearly err in denying Defendant a two-point reduction for acceptance of responsibility.

## C.

Defendant argues that the district court erred when it imposed a five-level enhancement based on Defendant's admitted prior sexual abuse of as many as 100 minor boys before his marriage at the age of 42.[8] He claims that the enhancement should not apply because that abuse, which occurred 20 to 40 years prior to the offense of conviction, is unrelated to the offense of conviction. In support, Defendant relies on our decision in *United States v. Surratt*, 87 F.3d 814, 819 (6th Cir. 1996), which held that U.S.S.G. § 2G2.2(b)(4) (now § 2G2.2(b)(5)), did not apply to past sexual abuse unrelated to the offense of conviction. However, as the government points out, this is not the law.

Section U.S.S.G. § 2G2.2(b)(5), formerly § 2G2.2(b)(4), provides for a five-level increase "[i]f the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." U.S.S.G. § 2G2.2(b)(5). The commentary to this guideline, which was amended in 1996,[9] states that:

> "Pattern of activity involving the sexual abuse or exploitation of a minor" means any combination of two or more separate instances of sexual abuse or sexual exploitation of a minor by the defendant, *whether or not the abuse or exploitation (A) occurred during the course of the offense . . . .*

---

[8] The district court based the enhancement on Defendant's confession, which it found reliable. ID# 2584. On appeal, Defendant "concede[s] that the overall record adequately supports the district court's conclusion that he had sexual contact with a minor at least twice." Appellant's Br. at 20.

[9] The amendment did not change the language of the enhancement.

U.S.S.G. § 2G2.2, cmt. n.1 (1996) (emphasis added). The United States Sentencing Commission explained that the amendment clarified that the enhancement applied to conduct that occurred prior to the instant offense, even if it was unrelated the offense of conviction:

> [T]he "pattern of activity" may include acts of sexual abuse or exploitation that were not committed during the course of the offense or that did not result in a conviction. This revision responds in part to the holding in [*United States v.*] *Chapman*, 60 F.3d [894], 901 [(1st Cir. 1995)], that the "pattern of activity" enhancement is inapplicable to past sexual abuse or exploitation unrelated to the offense of conviction. The amended language expressly provides that such conduct may be considered. Accordingly, the conduct considered for purposes of "the pattern of activity" enhancement is broader than the scope of relevant conduct typically considered under § 1B1.3 (Relevant Conduct).

U.S. SENTENCING GUIDELINES MANUAL APPENDIX C, AMEND. 537, at 8 (1996).

Prior to this amendment, this Court and the First Circuit held that the conduct considered under § 2G2.2(b)(4) (now (b)(5)), must relate to the offense of conviction. *See Surratt*, 87 F.3d at 819; *Chapman*, 60 F.3d at 900-01. *Surratt* relied on *Chapman* in reaching this conclusion. This Court and the First Circuit relied in key part upon the fact that the application note did not clearly state that the conduct did not have to occur during the course of the offense, although another application note under the same guideline had such language. *See Chapman*, 60 F.3d at 901. As the Sentencing Commission explained, the 1996 amendment to the application note directly addressed this concern by inserting such a statement, specifically rejecting *Chapman*'s holding that the enhancement does not apply to past sexual abuse or exploitation unrelated to the offense of conviction. *See* U.S.S.G. App. C Amend. 537 at 8.

The First Circuit has acknowledged this change in the law. *See United States v. Woodward*, 277 F.3d 87, 91 n.2 (1st Cir. 2002) (rejecting *Chapman*'s requirement that pattern of activity must relate to offense of conviction given the Sentencing Commission's amendment to commentary); *see also United States v. Anderton*, 136 F.3d 747, 750 n.2 (11th Cir. 1998) (discussing the effect of the amendment). Although this Court has not addressed the precise

question of whether prior sexual abuse of minors must be related to the offense of conviction, we have already acknowledged the change in the law undermining *Surratt*'s holding. *See United States v. Gawthrop*, 310 F.3d 405, 414 (6th Cir. 2002) ("The 1996 guideline amendment clarified that the 'pattern of activity' may include acts of sexual abuse or exploitation *that were not committed during the course of the offense or that did not result in a conviction.*") (quoting U.S. SENTENCING GUIDELINES MANUAL APPENDIX C, AMEND. 537 (1996) (emphasis added by *Gawthrop*)). Other circuit courts have rejected such an argument as well, relying on the 1996 amendment to the commentary. *See, e.g.*, *United States v. Bacon*, 646 F.3d 218, 221 (5th Cir. 2011); *United States v. Olfano*, 503 F.3d 240, 243 (3rd Cir. 2007); *United States v. Garner*, 490 F.3d 739, 742-43 (9th Cir. 2007); *United States v. Lovaas*, 241 F.3d 900, 904-05 (7th Cir. 2001). And commentary interpreting the Guidelines is generally authoritative. *See Stinson v. United States*, 508 U.S. 36, 38 (1993) (stating that Guidelines commentary "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading, of that guideline"); *see also United States v. Geerken*, 506 F.3d 461, 465-66 (6th Cir. 2007) (clarifying amendment to Sentencing Guidelines Manual can be considered at sentencing). Thus, the district court in this case did not err in holding that Defendant's past abuse of almost 100 minor boys established a "pattern of activity" warranting an enhancement under U.S.S.G. § 2G2.2(b)(5).

Defendant also contends that because the Sentencing Guidelines expressly list the "pattern of activity" enhancement under "Specific Offense Characteristics," the enhancement conduct must be related to the offense. The Sentencing Guidelines list factors to be considered with regard to relevant conduct "[u]nless otherwise specified." U.S.S.G. § 1B1.3(a). As a general matter, relevant conduct is linked to the underlying offense and includes all acts

committed during the commission, preparation, or concealment of that offense. *See* U.S.S.G. § 1B1.3(a)(1). But the phrase "unless otherwise specified" allows courts to consider additional conduct when other provisions set forth more specific rules. Section 2G2.2(b)(5) is one of those more specific rules. It mandates a five-level increase for a pattern of activity involving sexual abuse or exploitation of a minor, and the Sentencing Commission specifically noted that it is broader than the scope of relevant conduct typically considered under U.S.S.G. § 1B1.3. U.S. SENTENCING GUIDELINES MANUAL APPENDIX C, AMEND. 537, at 8 (1996). The current application note defining "pattern of activity" clearly indicates that the enhancement is to be applied when a defendant has repeatedly abused minors, regardless of when that conduct occurred. *See* U.S.S.G. § 2G2.2, cmt. n.1.

In sum, the district court correctly applied the "pattern of activity" sentencing enhancement after finding that Defendant, by his own admission, had engaged in two or more separate instances of sexual exploitation of a minor.

**IV.**

For the foregoing reasons, Defendant's conviction and sentence are AFFIRMED.